Cleaveland *vs.* Stewart and others.

No. 45.—ABSALOM C. CLEAVELAND, plaintiff in error, *vs.* EDMUND STEWART, NATHAN RESPASS, WILLIAM WORTHY and JOHN BARKER, survivors, defendants in error.

[1.] An Incorporated Academy, is a private corporation, notwithstanding it may derive its support in part, from the government.

[2.] "We the *Trustees of Oakchumpna Academy,* promise to pay A. C. Cleaveland or order, six hundred dollars, for teaching a school at said Academy, during eleven months of the year eighteen hundred and forty. We pay the same money on the first day of the year, 1841.
   *26th Oct.* 1839.

        EDMUND STEWART,
        WM. ROBERTSON,
        NATH. RESPASS,
        WM. WORTHY,
        JOHN BARKER."

Held, that the makers of this paper are personally liable, and the words "*Trustees of &c.,* are merely words of description.

[3.] Held also, that in a suit on this paper against the makers, they might plead and prove that the plaintiff contracted with them as agents, and that credit was given to their principal; also that the plaintiff might show by parol, that he contracted with them personally, and that he gave credit to them individually.

This was an action of Assumpsit, brought by the plaintiff in error, against the defendants in error, and William Robertson, then in life, but who died pending the action, in Upson Superior Court, and was tried before Judge FLOYD, April Term, 1847.

The action was predicated upon an instrument, of which the following is a copy, to wit:

"We the Trustees of the Oakchumpna Academy, promise to pay A. C. Cleaveland or his order, six hundred dollars, for teaching a school at said Academy, during eleven months of the year (1840) eighteen hundred and forty. We pay said money on the first day of the year eighteen hundred and forty-one.

This 26th Oct., 1839.　　　(signed)　　EDMUND STEWART,
　　　　　　　　　　　　　　　　　　WM. ROBERTSON,
　　　　　　　　　　　　　　　　　　NATHAN RESPASS,
　　　　　　　　　　　　　　　　　　WM. WORTHY,
　　　　　　　　　　　　　　　　　　JOHN BARKER."

The defendants pleaded failure of consideration. During the pending of the case, and before the trial, William Robertson died, and by an order of the Court, the plaintiff was permitted to proceed against the survivors.

Upon the trial, the counsel for the plaintiff introduced the said instrument, and read the same in evidence to the jury. The testimony of John G. Stokes, taken by commission, was then read to the jury, in behalf of the plaintiff, which proved that the plaintiff offered his services in pursuance and in performance of said contract, and that the defendants refused to accept said services, and refused him permission to teach said school, alleging that the times had become hard, and that they could not make the money by the school, which they had promised to pay plaintiff for the teaching of the same. The plaintiff here closed.

The defendants opened their case, and read their plea of failure of consideration, alleging that the plaintiff had conducted himself after the making of said contract, and before he was to enter upon the execution of the same, in such a manner as to render him an improper person to have and take charge of said school; and then introduced William Robertson as a witness, who proved that he had been to school to the plaintiff, and that he was a good teacher; that the students on one occasion, about the close of the school in 1839, turned plaintiff out, and forced him to permit them to have spirituous liquors; and that some of the large students drank too

much. The defendants then introduced Inman Stephens to prove that accounts made out by plaintiff, in 1839, were too large, and whose testimony was objected to, and overruled by the Court. The defendants then introduced Elijah Thompson, who testified that plaintiff was a good teacher, and a sober man. The testimony of Samuel Carter, taken by commission, was then introduced, and proved a conversation between plaintiff and defendants, after said instrument was given, in which conversation plaintiff stated, that inasmuch as the hardness of the times was the only excuse, he should hold on to the instrument. The defendants then introduced the testimony of Jonathan Stewart and Willis Hobbs, taken by commission, which proved that at the last day of the school of 1839, the plaintiff and some of the students drank too much. The defendants then offered in evidence the plaintiff's agreement in writing, made by him at the time of the execution of the instrument sued on, as follows, to wit:

"Georgia, Crawford county. By these presents, I, A. C. Cleaveland, bind myself to the Trustees of Oakchumpna Academy, to perform the various duties of a teacher at said Academy, so far as I, the said A. C., am competent; commencing on the first school day in February next, and ending said school on the twenty-fifth of December thereafter, with a vacation of one week at the end of every three months. I further make over to the trustees, all claim on the State for the money that is coming to me, or said Academy, and hereby make them my lawful agent to draw such money.

This 26th Oct., 1839.        A. C. CLEAVELAND."

And also the act incorporating the said Academy; both of which were objected to by plaintiff's counsel, on the ground that the defendants had not pleaded the act specially, nor, that they were the agents of the incorporation, nor, that the contract with plaintiff was made by them as such. Whereupon the objection was overruled by the Court, and said instrument was admitted in evidence, and the act incorporating said Academy read to the jury. The defendants then closed.

The plaintiff, in rebuttal introduced the testimony of Samuel Carter, taken by commission, which proved that the plaintiff was a good teacher, and that the defendants were well pleased with him as such. The plaintiff then introduced the testimony of Walter T. Murchison, which proved in substance the same as Carter's. The plaintiff then offered Samuel Wilson and ——— Cobb, to prove, that it had been the custom at the said academy for the

trustees to employ a teacher and pay him out of their individual funds, and to take the subscription to the school for the purpose of remunerating themselves therefor; which was objected to on the part of the defendants, on the ground that it was irrelevant, and could not be received to explain the written contract; the objection was sustained by the Court, and the testimony ruled out.

After argument before the jury, the Court below pronounced the following opinion:

"That at the time when a motion for a nonsuit was made, the Court was not satisfied that the defendants were not liable in their individual capacity upon the instrument set forth in the plaintiff's declaration, and therefore refused to nonsuit. The defendants have introduced in evidence a paper bearing date on the same day with the instrument declared on, made at the same time, and between the same parties. The two instruments show but one contract; the one binding the trustees, and the other the plaintiff. In construing the contract so as to ascertain the liabilities of the parties, both instruments must be taken together; and thus taken, in the opinion of the Court, they show the defendants liable only in their corporate capacity. And, as the whole case, in the opinion of the Court, turns upon that question, the jury are directed to find for the defendants."

To which decision the counsel for the plaintiff excepted.

1. Because said Court allowed the defendants to give in evidence the act of the Georgia Legislature, incorporating said Academy, when said defendants had not plead that they acted as the agents of said corporation in the contract with plaintiff, and that they were not individually bound thereon.

2. Because the Court erred in ruling out the testimony offered, to prove that it was the custom of the trustees of said Academy to employ a teacher and pay his salary out of their individual funds, they taking the subscription to the school for the purpose of reimbursing themselves.

3. Because the Court erred in holding, that said defendants were not individually bound upon said contract, but that they contracted in their corporate capacity, and were liable, if at all, in that capacity.

4. Because said Court erred in directing the jury to sign a verdict for said defendants, and in not allowing them to retire and consider of the testimony submitted in the cause.

G. R. HUNTER, and GREEN & CAUSEY, for the plaintiff.

A. W. HAMMOND & O. GIBSON, for defendants.

GREEN, for the plaintiff in error, contended—

The Oakchumpna Academy is a corporation, and can contract in but two ways; it may contract by its corporate seal, or by an authorized agent. *Story on Agency, ch.* 2, *sec.* 16; *ch.* 5, *secs.* 52, 53. A corporation is an artificial person, and hence the reason of the rule. This contract is not by the corporate seal, neither is it by an authorized agent. The note does not show either. To bind the corporation, the note should either be by the corporate seal, or by an agent duly authorized, because the charter does not authorize the making of promissory notes. *Dawson Comp.* 21; 1 *Blackstone Com.* 472; 2 *Kent Com.* 289, 290, 291. All acts incorporating privileged companies must be construed strictly; this is the modern rule. 2 *Kent Com.* 299.

It is contended that the defendants acted as the agents of the corporation, and are therefore not personally liable. The rule is, that government agents are *prima facie* not liable. *Story on Agency, sec.* 302; *Macbeath* vs. *Haldimand,* 1 *Term R.* 177; 1 *ib.* 674; 1 *Cowen R.* 513; 19 *Johns. R.* 60; 8 *Cowen R.* 191; *Ghent* vs. *Adams et al.,* 2 *Kelly R.* 214. But the agents of private persons or corporations are always *prima facie* individually liable, unless their liability is positively negatived on the face of the contract. The Oakchumpna Academy is a *private* and not a *public* corporation. *Society* vs. *New Haven,* 8 *Wheat. R.* 464; *Dartmouth College* vs. *Woodward,* 4 *id.* 518. A number of cases could be shown to the same point, but suppose these sufficient. The defendants are personally liable, whether they acted as the agents or as the corporation itself. The language is, " we the trustees;" the word " trustees " is mere *descriptio personarum. Story on Agency, secs.* 154, 155. The rule is the same as to sealed instruments. *ib. sec.* 155; 1 *Chitty Pl.* 80; *Taft* vs. *Brewster,* 9 *Johns. R.* 334; *Hills* vs. *Bannister,* 8 *Cowen R.* 31. In the last case, the note was given for a debt due from the corporation, and so mentioned, which makes it a strong case. In *Stone* vs. *Wood,* 7 *Cowen R.* 453. Chief Justice Savage remarks : " Whatever authority one person may have to bind another, if he does not sign as agent or attorney, he binds himself and no other person." Again, *Stackpole*

vs. *Arnold*, 11 *Mass. R.* 27 ; *White* vs. *Skinner*, 13 *Johns. R.* 307 ; *Tippets* vs. *Walker*, 4 *Mass. R.* 594, are all leading cases upon this point. Again, *Brockway* vs. *Allen*, 17 *Wend. R.* 40 ; 3 *id.* 94 ; 10 *id.* 271 ; *ib.* 87, are all cases in point, and conclusive of this ground. But still further, *Story on Agency, secs.* 154, 155, 156, 157, 158, 159 ; 2 *Kent Com.* 630, 631. There are cases where both principal and agent are bound, or either at the election of the plaintiff. *Story on Agency*, 161 ; 2 *Kent Com.* 630, 631. In making this note the corporation did not contract, because the word " *we* " is used, referring to the various persons defendants ; a corporation cannot be used in the plural—a corporation is but one person.

This action has been commenced against the defendants in their individual capacities ; they have pleaded failure of consideration alone. To have avoided personal liability they should have pleaded their agency, or corporate capacity, because they are liable *prima facie* from the face of the note. The plea would have been one of confession and avoidance ; such defences must be pleaded even under the English rule, 1 *Chitty Pl.* 554, and especially under our statute. *Johnson & Black* vs. *Ballingal*, 1 *Kelly R.* 68 ; *Buchannon* vs. *Dill, ib.* 256. Now, to show that this note is within this rule, see the above cases in 17 *Wend. R.;* 13 *Johns. R.;* 9 *id. ;* 4 *Mass. R.;* 19 *Johns. R.* 60 ; 1 *Cowen R.* 536 ; 7 *id.* 453 ; 3 *Wend. R.;* 10 *id.* Again, if a person seek to avoid personal liability, he must show a remedy against some other person ; how would a declaration look declaring against *one* small corporation in the plural, thus, they the " Oakchumpna Academy promised," &c. ?

The Court below should have allowed testimony showing the custom prevailing at the time the contract was made, and by which the contract must be construed. This is not in violation of any rule. See *Greenl. Ev. secs.* 292, 293, 294. Such evidence is not to vary or alter the contract, but to show what the contract is according to the understanding of the parties. *ib.* 282. The custom of the place may be given in evidence to aid the court in the construction of the contract, *ib.* 293, 294 ; *Renner* vs. *Bank of Columbia*, 5 *Cond. R.* 691 ; *Halsey* vs. *Brown*, 3 *Day R.* 346 ; *Yeaton* vs. *Bank of Alexandria*, 2 *Cond. R.* 186 ; 9 *Mass. R.* 155, all in point, and showing that a custom which prevails, may be given in evidence to aid in the construction of the instrument.

The Court below should have submitted the questions of fact to the jury ; there was evidence from which the jury could have

arrived at the conclusion that it was the intention of the parties that the defendants should be individually bound. Where there is any evidence, the jury must determine as to its weight. *Stell* vs. *Glass*, 1 *Kelly R.* 475, *and cases there cited.*

A. W. HAMMOND and O. C. GIBSON, for the defendants in error,

Submitted that whenever the capacity in which parties contract is manifest *in the contract*, or by contemporaneous writings, their liability cannot be varied from the contract; and insisted that the note sued on, in its body showed clearly that the defendants in error did not contract as individuals, but as trustees; and that such was the understanding of the plaintiff in error, is made, *if possible*, more striking, by his obligation given at the same time as the note. 11 *Mass. R.* 27, 29; *Story on Agency, secs.* 147, 155, 274, 275, 278, 52, 53; *Greenl. Ev. secs.* 278, 282, 283; *Harper R.* 120; 1 *Cowen R.* 536.

The *usage* rejected was not such as could be proved. *Greenl. Ev. sec.* 292, *and note* 4.

The counsel for defendants insisted further, that they were not liable individually, and cited *Ghent and others* vs. *Adams*, 2 *Kelly R.* 214, and relied upon that case, and the cases there cited. They contended that, admitting the defendants were private agents, yet the contract disclosing their principal, and no fraud practised, the principal was bound and not the agents. The credit was given to the incorporation, the trustees being the mere agents through whom the contract was made.

HUNTER, for the plaintiff in error, in conclusion.

A corporation cannot contract directly, except under seal, yet it may, by vote or other act sufficiently expressive of the corporate will and intention, appoint an agent, whose acts and contracts, within the scope of his authority, will be binding on the corporation. 1 *Nott & McCord* 231. Applying this rule to the present case, it was competent for the Oakchumpna Academy to have contracted directly with the plaintiff in error, under its seal, as provided for in the act of incorporation, or to have delegated the power of making the contract to the defendants in error, and in the latter event it would have been the act and deed of the corporation. Has this contract been executed in either of these two modes? That the seal of the corporation has been used, is not pretended; and it is equally clear that the defendants in error have

not made this contract as the agents of the Oakchumpna Academy. The name of the principal does not appear on the face of the paper, except as *descriptio personarum*, and is not signed by any person as agent for the corporation. It is, then, the individual act of the defendants in error, and they are individually liable. But while it is manifest on the face of the instrument that the defendants in error are individually liable, and contracted as individuals, could they not have discharged themselves by pleading that they acted as the agents of the incorporation in making the contract, and disclosed their agency, and supported this plea by proof at the trial? The consideration of this question becomes unnecessary, since no plea of agency was put in, and no proof of it adduced on the trial. We may safely conclude, then, that the instrument declared upon is the individual obligation of the defendants in error, and that the Court below committed error in ruling the contrary.

We hold that the Court below committed error likewise, in excluding from the consideration of the jury, evidence of the custom and usage which prevailed at said academy, by which the trustees were held personally liable to the teacher for his services, they taking the school as an indemnity to themselves. This rule is applied to contracts in the transactions of life, upon the principle of presuming, that, in such transactions, the parties did not mean to express in writing the whole of the contract by which. they intended to be bound, but a contract with reference to known usage and custom. Evidence of custom and usage is admissible to annex incidents to written contracts, in matters with respect to which the contract is silent. 1 *New Library, Law of Eq.*, 144, 145.

We insist upon a reversal of the judgment of the Court below, upon the further ground that the Court committed error in assuming a certain fact to be proved, viz: that the instrument declared upon, was the corporate act of the defendants in error, which should have been left to the jury. It is for the jury to determine upon the effect of evidence, parol or written, after it is submitted; while the judge is called upon only to instruct the jury as to the law, if they shall from the evidence find a *particular fact* to exist. In this case, the Court said what effect plaintiff's and defendant's testimony should have; and after the case had been argued by counsel on both sides, withdrew the facts from the consideration of the jury, and directed the jury to find a verdict for defendants; and this we say was error in the Court below. The contract or note sued upon, having been read in evidence to the jury without

objection, *the effect* of it, as well as the other evidence submitted in the cause, were then questions exclusively for the consideration of the jury.    *Stell, guardian* vs. *Glass*, 1 *Kelly R.* 487.  We are, however, far from believing, that the pure and able Judge who tried this cause in the Court below, intended to trespass upon the rights and privileges of the jury.

*By the Court.*—NISBET, J., delivering the opinion.

I do not consider, as claimed by counsel, that this case is [1.] controlled by that of *Ghent* vs. *Adams, in* 2 *Kelly R.* 214.  In that case, the instrument sued on was made by certain individuals, with the addition of the letters J. I. C. to each of their names.  The Court ruled that they were not individually liable upon the face of the paper; that the letters J. I. C. indicated their character as Justices of the Inferior Court, and as public agents; and that credit must have been given to them in that character.  Being public agents—the agents in fact of a political or public corporation—persons dealing with them are presumed to know that fact, and to contract with them in that character.  It is argued that the Oackchumpna Academy is a public corporation, and upon the reasoning in *Ghent* vs. *Adams ;* if it is, these defendants are not personally liable.  But in our judgment, it is not.  Incorporation gives to many institutions, as banks, rail-road companies, colleges and schools, a certain public character ; the public are interested in them, and they subserve valuable public purposes ; but they are not legally public incorporations.  A corporation is public when it has for its object the government of a portion of the State ; and although in such a case it involves some private interests, yet as it is endowed with some portion of political power, the term *public* has been deemed appropriate.  Another class of public corporations are those which are founded for public—although not political or municipal—purposes, and *the whole interest* in which belongs to the government.   Thus, a bank, organized by the government for public purposes, is a public corporation if the whole of the stock and all the interest in it, reside in the government. *Ang. & Am. Corp. Introduction* 9 ; *Dartmouth College* vs. *Woodward,* 4 *Wheat. R.* 518 ; 2 *Kent,* 275.  So the Trustees of the University of Alabama, were held for the same reasons, a public corporation 5 *Stew. & Por. Ala. R.* 17 ; and so would, no doubt,

the University of Georgia be held; and so also the Central Bank of Georgia. But as to the last named, there may be doubt.

Towns, cities, counties and parishes, are public corporations. *Ang. & Am. Corp.* 25; 1 *Bald. C. C. R.* 222; 2 *Kent Com.* 275.

But banks founded on private capital, hospitals founded on private benefactions, and colleges founded and endowed by private enterprise and liberality, although the funds may in part be derived from the bounty of the government, are private corporations. 4 *Wheat, R.* 518; 7 *Serg. & Rawle* 559; 2 *Kent. Com.* 274, 275; 1 *Sum. C. C. R.* 276; 9 *Wheat. R.* 907. An incorporated academy, founded on private funds, is, like a college, a private corporation. It is no denial of this position, that they are entitled, under certain conditions, to share in the academic fund. This bounty the academy can receive or not. It is the beneficiary of the State, but that gives the State no rights over it; it may withdraw its bounty, but it has no visitorial powers over it. This principle was settled in the case of *Allen* vs. *McKeen,* reported in 1 *Sum. C. C. R.* 276. That case made the question whether Bowdoin College was or not a public incorporation; it was argued that it was, because its funds had been generally derived from the bounty of the government. Mr. Story, in a learned opinion, decided that it was a private corporation; and *that it was so, notwithstanding its funds had been generally derived from the bounty of the government.* [2.] The instrument upon which this action is founded, is in the following words:

"We the Trustees of Oakchumpna Academy, promise to pay A. C. Cleaveland or his order, six hundred dollars, for teaching a school at said Academy, during eleven months of the year eighteen hundred and forty. We pay the same money on the first day of the year eighteen hundred and forty-one.

This 26th Oct., 1839.

EDMUND STEWART,
WM. ROBERTSON,
NATHAN RESPASS,
W. WORTHY,
JOHN BARKER."

A plea of incompetency from intemperance, false charges for tuition the previous year, and such general character, that the signers of the above paper were unable to make up the school; was filed. There was no plea filed to the effect that they were not personally bound, and that the credit was given to the corporation. In addition to the before recited instrument, the record exhibits a

paper signed by Cleaveland, and bearing even date with it, in which he binds himself to the Trustees of Oakchumpna Academy to perform all the duties of a teacher, from the 1st day of February, 1840, to the 25th December thereafter, and relinquishes to them all claim to the money that might be coming to the academy from the State. The suit was brought against the defendants in their individual character, to charge them personally. The defendants demurred to the writ, upon the ground that they were not liable personally, and the Court overruled the demurrer. Upon the trial, however, the paper signed by Cleaveland being in evidence, the presiding judge charged the jury, that taking the two papers together as evidence of the contract, the defendants were not liable in their personal characters. To this charge the plaintiff excepts. We think that the paper signed by Cleaveland, so far from disproving that the contract was by these defendants personally, and that the credit was given to them individually, strengthens that idea. The paper made by Cleaveland, is in the nature of a covenant with the trustees, and not with the academy in its corporate character, that he will discharge the duties of teacher. In it he relinquishes to them the dividend which might accrue to the institution, from the State; which relinquishment seems to us to imply, that he was not looking to the academy, as a corporation, for his money, but to them; and also that they had assumed to pay him, and required this relinquishment that they might control the whole income of the institution, and thus protect themselves. Thus viewing this paper, and looking at it and the instrument together, we think these defendants were personally liable. Judging as we do, however, that the paper made by Cleaveland, has but little to do in any way with the question, we lay it aside. The real question is, were these defendants liable personally upon the instrument sued on? We think the learned judge presiding below, was right in the view he took of this question on the demurrer, and wrong in his charge to the jury.

I quote from Chancellor Kent the two rules, which, to my mind, apply to this question, and by which it is to be tested; premising that, upon the supposition that this corporation, and not the individuals, is bound, it is bound by the act of its agents; and therefore the question is one of liability between the defendants, as agents, and their principal. "It is a general rule," says Chancellor Kent, "standing on strong foundations, and pervading every system of jurisprudence, that when an agent is duly constituted, and names

his principal, and contracts in his name, and does not exceed his authority, the principal is responsible, and not the agent." 2 *Kent Com.* 630. Such is the rule on one side; upon the other, it is as follows : " But if the agent binds himself personally, and engages expressly in his own name, he will be held responsible, though he should in the contract or covenant give himself the description or character of an agent." 2 *Kent Com.* 632. Looking at this case in the light of these two rules, I remark, that the corporate name of this institution is not subscribed to this instrument, in its own proper designation, by its officers, or any one purporting to be its agent. The paper is signed by five individuals, who are, to all appearance, joint promissors. In the body of the instrument, they make a personal undertaking to pay ; they say, " *we* the Trustees of the Oakchumpna Academy, *promise,*" &c., and afterwards, "*we* pay the same money," &c. An assumpsit is not found in the instrument on the part of the corporation. If the instrument had declared " that the Oakchumpna Academy promise to pay," signed as it is, perhaps the question would have been different; or if these defendants, being the agents, had described themselves as such by their signature, the authorities would then have justified a doubt. The true and only safe way for an agent to execute a contract, is to sign the name of his principal, adding thereto, by *himself, agent.* What, then, causes this paper to differ from any personal undertaking in writing ? It is said, in this, that in the body of the instrument they describe themselves as " the Trustees of the Oakchumpna Academy." *That,* say the counsel, characterises this as the undertaking of the Oakchumpna Academy. We think it only descriptive of their condition—only *descriptio personarum.* They are to be construed as saying, that they *who are* Trustees of Oakchumpna Academy promise, &c.—they do not the less *promise* to pay because they are trustees, *nor is* their liability the less or more because they choose to say that they *are trustees* of this academy. Suppose they had said, *we ministers of the gospel,* or *we lawyers,* or *we blacksmiths promise to pay,* their liability would not have been increased or lessened by such a description of themselves. The only advantage they derive from this description of themselves is, the evidence it affords of their right to go back upon this corporation—if indeed it was *its* debt—for remuneration, in the event of their having it to pay. I shall now proceed to show that this view of this paper is sustained by authority. And first, the rule as laid down by Chancellor Kent covers this case fully—it

is just the case described by the rule. These defendants, we will assume, are in this transaction the agents of the Oakchumpna Academy. Now, if they have bound themselves *personally, and have engaged expressly in their own names,* they will be held responsible *though* they have in the contract given themselves the *description or character of agents.* But in this case they have bound themselves personally, they have *engaged expressly in their own names* to pay this money, therefore they are liable, although they describe themselves in the contract as trustees of the Oakchumpna Academy. Mr. Story remarks, to the same effect with Chancellor Kent, as follows: "If from the nature and terms of the instrument, it clearly appears, not only that the party is an agent, but *that he means to bind his principal,* and to act for him, and not to draw, accept or indorse the bill on his own account, that construction will be adopted, however inartificial the language, in furtherance of the actual intention of the instrument." Now, it can not be said that there is any evidence on this paper that these defendants meant to bind their principal, nor can such intention be inferred from the nature of the instrument; for as I have before remarked, there is nothing in the paper which can make it differ at all—unless the description of these persons as trustees can—from an out and out personal undertaking; aside from *that,* it is a perfect case of personal liability. But that *description* does not change the character of the paper; so say the authorities, for Mr. Story proceeds— "But if the terms of the instrument are not thus explicit, *although it may appear that the party is an agent,* he will be deemed to have contracted in his personal character." *Story on Agency,* 146. The like doctrine is held upon the highest authority in England. The case of *Appleton* vs. *Binks,* reported in 5 *East,* 178 is a leading common law case. There the defendant had covenanted for himself, his heirs, executors, and *for another;* the court held that he was personally bound notwithstanding, although he described himself in the deed as covenanting *for and on account of another.* In *Burrell* vs. *Jones,* 3 *B. and Ald. R.* 47, (5 *Eng. C. L. R.* 223,) certain solicitors had undertaken to pay to a landlord a sum of money as rent, in these words, to wit: "We, *as solicitors to the assignees,* undertake to pay," &c., their individual names being subscribed. It was ruled that they were personally liable, notwithstanding the description of themselves as solicitors. Abbot, C. J., said: "I am of opinion that the expression used in this undertaking, 'we, as solicitors,' binds those who personally signed it."

Bayley, J., said : " I am of the same opinion. It is clear that an agent may so contract as to make himself personally liable, and I think that the words here used, ' we undertake,' are sufficient to place the defendants in that situation. The language of an instrument is to be taken most strongly against the party using it. Now, when the party used the words ' we undertake to pay,' they in effect say, that they are the persons to whom the other party is to look for payment." Best, J., remarks : " The terms ' as solicitors,' are merely descriptive of the character they fill, and which has induced them to undertake." This case is in its features the same with the one I now review. These defendants say, " we promise to pay," " we pay the same money," &c., just as the solicitors did in the case in *B. & Ald.*

In the case of *Tippets* vs. *Walker et al*, 4 *Mass. R.* 594, a committee appointed by the directors of a turnpike company, covenanted under their hand and seal, with the plaintiff, describing themselves in the instrument *as a committee of the directors of that company.* Parker, C. J., held them personally liable. So in a later case, to wit, *Stackpole* vs. *Arnold,* reported in 11 *Mass.* 29, the same learned judge lays down the following rule : " No person is to be considered the agent of another, *unless he stipulates for his principal by name,* stating his agency in the instrument which he signs." In *Duvall* vs. *Craig et al*, 2 *Wheat R.* 45, Robert Johnson and Elijah Craig entered into a covenant of warranty, describing themselves *as the trustees of one John Craig;* and as such trustees undertook to warrant, and *sign their names as trustees*, and were held personally liable. " If," says Story, J., " the trustee chooses to bind himself by a personal covenant, he is liable at law for a breach thereof, in the same manner as any other person, *although he describes himself as covenanting as trustee;* for in such case the covenant binds him personally, and the addition of the words *as trustee,* is but *a description of the character in which he acts,* for his own protection." In *Fash* vs. *Ross,* 2 *Hill S. C. R.* 294, Johnson, J., rules as follows : " An agent may, if he will, undertake to do the act for his principal, and if he does, he is bound, *although he describe himself as agent."* The case of *Tafft* vs. *Brewster,* 9 *Johns. R.* 334, is also a strong case in support of these principles ; but as I must believe that they are already impregnably fortified, I shall do no more than refer to the authorities already quoted, as well as others.

*Story on Agency* 146, *sec.* 155; *Ang. & Am. Corp.* 253 ; *Paley on Agency, by Lloyd, ch.* 6, *sec.* 1, *p.* 378 *to* 402 ; 11 *Mass. R.* 27, 29 ;

Cleaveland *vs.* Stewart and others.

*Leadbitter* vs. *Farrow,* 5 *M. & S. R.* 345; *Kennedy* vs. *Gouveia,* 3 *Dow. & Ryl. R.* 503; *Stephens* vs. *Hill,* 5 *Esp. R.* 247; 2 *Kent Com.* 630, 631; 4 *Mass. R.* 595; *White* vs. *Skinner,* 13 *Johns. R.* 301; 9 *id.* 334; *Appleton* vs. *Binks,* 5 *East R.* 148; *Claybill* vs. *Fitzgerald,* 1 *Wils. R.* 28, 58; 2 *Vernon R.* 280; *Ryan & Moody* 229; 1 *Car. & Payne,* 648; 2 *Wheat. R.* 45; 3 *Chitty on Com. & Manuf.* 211, 212.

The Court below permitted the defendants to go into proof [3.] that the plaintiff contracted with them as agents of the corporation, without having plead that fact, and in this particular, exception is taken, and clearly well taken. The general issue was not filed in this case; there is no plea at all, but one special plea to which I have before adverted. Now, the Court permits the defendants to give in evidence the law incorporating this academy, and other evidence the effect of which is to discharge themselves, under the view of the case taken by the Court, and that, too, without notice to the plaintiff, and without plea. This is plainly a case where the defence should be spread on the record. This defence is clearly within the requirement of our statute, that a defendant shall plainly, distinctly, and fully set forth in writing his grounds of defence.

The presiding judge having determined that the defendants were not personally liable, withdrew all the evidence in favour of the plaintiff from the jury, and directed them to find for the defendants. In this particular also, exception is taken, and, we think, well taken. The rule in cases of the kind now before us, further is, that " the liability of the principal depends upon the facts that the act was done in the exercise and within the limits of the powers delegated, and especially, that it was the intent of the parties that the principal and not the agent should be bound. In ascertaining these facts as connected with the execution of a written instrument, it has been held that parol testimony is admissible," *Ang. & Am.* 236. This Court has ruled to the same effect in two instances. 1 *Kelly R.* 429; 2 *ib.* 218; 5 *Wheat. R.* 326; 1 *Cowen R.* 536; 12 *Mass. R.* 240; 1 *Cranch R.* 345; 6 *Ad. & Ell. R.* 468; 8 *Meeson & Welsby R.* 440; *Story on Agency,* 190, 191, 334, 335, 336. According to this rule, it was competent, if the pleadings would have permitted it, for the defendants to prove that the academy was incorporated, that they acted as its agents, and that the plaintiff looked to the incorporation for his money. So also on the other hand, particularly as the Court had ruled that

they were not personally liable, and the plaintiff's action being against them in their individual characters, it was competent for him to sustain his action by proof that the contract was personal, and that he gave credit to them individually.   There was some evidence, as we learn from the record, that the plaintiff gave them and not the corporation, the credit.   Whatever it amounted to, whether little or much, the jury were the judges.  It ought to have been submitted to them, and in withholding it, we think the Court erred.   We do not believe that the Court erred in refusing the evidence offered by the plaintiff, to prove that it was the custom of the members of this corporation to take themselves the income of the school, and become personally responsible for the teacher's salary.   But as this point was not insisted on by the plaintiff in error, I shall not discuss it.

Let the judgment of the Court below be reversed.