(160 App. Div. 331)

### NEWMAN v. NEWMAN et al.

(Supreme Court, Appellate Division, First Department. January 9, 1914.)

1. BILLS AND NOTES (§ 339*) — BONA FIDE PURCHASER — NECESSITY OF INQUIRY.

    Where a corporation made its note, without consideration, to the order of its vice president, who, with the treasurer, signed the note for the company, and the payee transferred it to a purchaser, who made no inquiry as to the consideration or the authority of the company to make the note, the purchaser could not claim that an inquiry would have been useless, where there was no evidence that proper inquiry would not have brought out all the facts.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 821–823; Dec. Dig. § 339.*]

2. BILLS AND NOTES (§ 341*) — BONA FIDE PURCHASER — CONSTRUCTIVE NOTICE.

    Where a corporation made its note to the order of its vice president, who signed it for the company, and transferred it to a purchaser, who paid for it by check to the vice president individually, without inquiry as to

the consideration for the note, the purchaser was put on inquiry by the form of the note, and was chargeable with notice that the note was without consideration.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 829; Dec. Dig. § 341.*]

3. CORPORATIONS (§ 429*)—PAYMENT—RECOVERY.

Where the vice president of a corporation advanced $1,500 to it and subsequently took from the company three notes to his order signed by the treasurer and himself, for $833 each, and transferred them to a purchaser who made no inquiry as to the consideration for the notes, the corporation, having paid two of the notes, could recover from the purchaser the excess over the amount advanced to it by the vice president.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1720–1723, 1725; Dec. Dig. § 429.*]

Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Appellate Term, First Department.

Action by Arthur L. Newman against Herman A. Newman and the John J. Mitchell Company. Judgment dismissing the complaint on the merits and awarding judgment for the defendant the John J. Mitchell Company on its counterclaim was affirmed by the Appellate Term, and plaintiff appeals by permission. Affirmed.

See, also, 142 N. Y. Supp. 1132.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

David L. Podell, of New York City, for appellant.
John Patterson, of New York City, for respondent.

LAUGHLIN, J. This is an action on a promissory note purporting to have been made by the defendant corporation to the order of the defendant Newman, which he indorsed and delivered to the plaintiff, who is his brother, for value before maturity.

The note is as follows:

"$833.34/100.          New York, December 30, 1911.

"On June 20th, 1912, after date we promise to pay to the order of Herman A. Newman, eight hundred and thirty-three $84/_{100}$ dollars at the Garfield National Bank, New York. Value received, with interest at 6 per cent.

"The Jno. J. Mitchell Co.,
"M. V. Quinlan, Treas.,
"Herman A. Newman, Vice Pres."

The only defense interposed, which it is necessary to consider on the appeal, is that the note was given without consideration, and that therefore it was not authorized. The by-laws of the defendant corporation were not proved, nor does it appear, otherwise than by the form in which the note in suit and two others executed at the same time were made, who, if any one, was authorized to make promissory notes for the corporation in the ordinary course of its business. Quinlan was the treasurer, and the defendant Newman was the vice president, of the corporation, and they made this note and two other promissory notes, bearing the same date, each for one cent less than the amount of the one in suit payable to the same payee on the 20th day of April and the 20th day of May, 1912, respectively, on or about the day they bear

date. At the time the notes were executed and delivered to the payee, no consideration therefor was received by the corporation; but shortly prior thereto the payee had advanced to the corporation the sum of $1,500. The president of the corporation testified that the only consideration for the notes was the amount thus advanced. According to the testimony of the payee, he transferred the first two notes to the plaintiff and received by check $1,500 therefor; and thereafter transferred the note in suit to the plaintiff on the day when the first note became due and received therefor $851.65 by check drawn to his order individually. The proceeds of these checks were appropriated to the defendant Newman's individual use, and it is conceded that he did not account for any part thereof to the corporation. When the first two notes became due, it would seem, from the certifications and indorsements thereon, that they were presented to the Garfield National Bank, at which they were payable, and, instead of being paid, were certified by it and made payable through the clearing house and were subsequently collected by the Chatham & Phenix National Bank of New York; and it was stipulated that the plaintiff received the proceeds of the collection.

The defendant's counterclaim for part of the moneys collected by the plaintiff on the first two notes was allowed to the extent of $166.-66, which was the excess of the face value of those notes over the $1,-500 advanced or loaned by the payee to the corporation.

These are the only material facts shown with respect to the authority of the treasurer and vice president to execute the note, or the consideration therefor, or the circumstances attending the delivery thereof to the plaintiff, or the knowledge or information received or acquired by him.

The theory on which the complaint was dismissed and the recovery on the counterclaim had, as appears by the findings of fact, was that the face of the note put the plaintiff on inquiry, and that he is chargeable with such knowledge as a reasonable inquiry would probably have revealed.

The learned counsel for the appellant contends that the corporation ratified the note in suit by paying the other two, and that the fact that it might have been but was not sued on the loan affords a sufficient consideration. It will be seen from the statement of facts that there is no evidence that there was any agreement or understanding when the $1,500 was loaned or advanced by the payee of the notes to the corporation that notes were to be issued therefor; nor is there any evidence that at the time the notes were issued the payee was demanding payment of the loan, or that he attempted to exact the additional $1,000 as usury for a further forbearance, or that on issuing the notes there was any understanding or agreement with respect to forbearance. If the additional $1,000 was exacted as usury, the entire amount of the note in suit would represent a usurious excess of interest. These facts, however, it is not necessary to consider further, nor is it necessary to express an opinion on any question of usury in this case, for no point in that regard was made upon the trial or on the appeal. The reasonable inference from the facts is that the additional $1,000 was

a pure gratuity or bonus, without any consideration flowing to the corporation therefor, and that is the theory on which the case was on which the appeal has been argued.

[1, 2] The plaintiff, having made no inquiry, so far as the evidence shows, cannot be heard to say that an inquiry would not have revealed the truth. According to the evidence, there was no fact which inquiry would have revealed, if it revealed the truth, that would have tended to show either actual or apparent authority or consideration for the making of the note in excess of the amount of the loan; and there is nothing to justify an inference that reasonable inquiry would have resulted in information contrary to the true facts. The authorities, therefore, on which the appellant relies (Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585; Wilson v. M. E. R. Co., 120 N. Y. 145, 24 N. E. 384, 17 Am. St. Rep. 625), are not in point. If the plaintiff was put upon inquiry by the form of the note, then he is chargeable with knowledge that the note was given without consideration, and, manifestly, he cannot enforce payment.

[3] The rule which precludes his right to recover on the note, I think, sustains the counterclaim for the amount which he collected on the second note over and above the amount of the loan. See Rochester & C. T. R. Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L. R. A. 790. There is no evidence on which a ratification or an estoppel can be predicated, for it does not appear that either the first or second note was paid by the corporation at the time the plaintiff became the holder of the note in suit. It is not claimed that plaintiff did not know that his brother was selling those notes for his own benefit, or that there is any evidence from which it might be inferred that the plaintiff was led to believe that these notes were being negotiated for the benefit of the corporation. The plaintiff received the note from his brother, who, although an officer of the corporation and one of the makers of the note as such officer, was made the payee of the note in his individual right, and sold it for his own benefit, as apparently was well understood by the plaintiff, who paid for it by check to the order of his brother individually.

It is well settled under the authorities that in these circumstances the plaintiff would have been put on inquiry if he had taken the note in payment of or as security for an indebtedness or obligation owing by his brother. Ward v. City Trust Co., supra; Wilson v. M. E. R. Co., supra; Rochester & C. T. R. Co. v. Paviour, supra. See, also, Havana C. R. R. Co. v. Knickerbocker T. Co., 198 N. Y. 422, 92 N. E. 12. The only points of difference between the adjudicated cases cited and the case at bar are that here another officer of the corporation joined with the plaintiff's brother in making the note, and the plaintiff paid consideration for the note in the form of a check to the order of his brother individually, instead of applying it in extinguishment of or as security for an indebtedness from his brother to him. I am of opinion that the fact that another officer of the corporation joined with plaintiff's brother in making the note did not relieve the plaintiff from inquiry when he found that his brother was negotiating the note for his personal benefit. Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435;

Cheever v. Pittsburg R. Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646. See, also, Wilson v. M. E. R. Co., supra.

It is not claimed that there is any distinction on principle between purchasing such a note with knowledge that it is being negotiated for the benefit of an officer of the corporation individually and giving him individual credit on it. Of course, if there was any fact or circumstance indicating that the plaintiff's brother was negotiating the note to raise funds for the corporation or to indicate that a reasonable inquiry would have revealed that fact, the case might require a different decision. When it was shown that this note was issued without consideration to plaintiff's brother individually and that the plaintiff paid for the first two notes precisely the amount of the loan made by his brother to the corporation and about 10 per cent. less than the face value of short term notes of an apparently solvent corporation, I am of opinion that it was incumbent on the plaintiff to show the circumstances under which he acquired the notes, and that on his failure to take the stand and his brother's failure to testify on the subject—further than to state the consideration which he received—the inference is fairly warranted that plaintiff knew perfectly well the entire transaction and that there was in fact no consideration for the notes other than the $1,500. Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836; Am. Ex. Nat. Bank v. N. Y. Belting, etc., Co., 148 N. Y. 698, 43 N. E. 168; C. N. Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; Gerard et al. v. McCormick, 130 N. Y. 261, 29 N. E. 115, 14 L. R. A. 234; Bank of N. Y., N. B. Ass'n v. A. D. & T. Co., 143 N. Y. 559, 38 N. E. 713. Although the trial court did not specifically make a finding to this effect, yet, since the finding would be warranted by the evidence, this court would not be required to reverse the determination even if the form of the note in and of itself did not put the plaintiff on inquiry.

It follows that the determination should be affirmed, with costs.

CLARKE, J., concurs. SCOTT, J., concurs on first ground.

INGRAHAM, P. J. (dissenting). The action was brought on a promissory note, dated December 30, 1911, of the John J. Mitchell Company, by M. V. Quinlan, treasurer, and Herman A. Newman, vice president, whereby the defendant the John J. Mitchell Company, on June 20, 1912, promised to pay to the order of Herman A. Newman $833.34 at the Garfield National Bank, New York, value received with interest at 6 per cent. This note was duly indorsed by the payee, Herman A. Newman, and before maturity delivered to the plaintiff for value. The answer denied that the note was duly delivered to Herman A. Newman for value or for any other consideration whatever, and that the note was duly indorsed and delivered to plaintiff for value or for any other consideration whatever, and for a special defense alleged that prior to December 30, 1911, the defendant Herman A. Newman, payee of the note, had advanced to the defendant the John J. Mitchell Company the sum of $1,500, which sum on said date remained unpaid; that on said date, and at the request of the said Herman A.

Newman, the defendant made, executed, and delivered to him three promissory notes aggregating $2,500, of which the note referred to in the complaint is one; that, of the said sum of $2,500, the sum of $1,000 thereof was a gratuity given to the said Herman A. Newman without consideration whatsoever, and that of the said three notes two thereof were given in payment of the aforesaid advance, together with the additional sum of $166.66, part payment of the aforesaid gratuity; that the said two notes last referred to given in payment for the moneys so due the said Herman A. Newman, and in part for the said gratuity, were duly paid and discharged; and the said note referred to in the complaint is for the balance of the said gratuity as aforesaid, and the said note was made, executed, and delivered to the said Herman A. Newman without any consideration whatsoever; and as a counterclaim the defendant asked for judgment against the plaintiff for the sum of $1,000, with costs. To this counterclaim the plaintiff served a reply.

The case came on for trial before the court, a jury being waived. The court found that the defendant the John J. Mitchell Company made, executed, and delivered the said note to Herman A. Newman on December 30, 1911; that prior to maturity of said note the payee, Herman A. Newman, indorsed the note in blank, and for value received duly delivered said note to the plaintiff; that said note was presented for payment according to its tenor, and payment thereof demanded and refused, whereupon said note was duly protested for nonpayment, and due notice of such nonpayment, protest, and dishonor was given to the defendants herein; and that no part of said sum of $833.34 and protest fees has been paid. The court further found that prior to December 30, 1911, Herman A. Newman was an officer of the John J. Mitchell Company and had advanced to said company the sum of $1,500, which sum on said date remained unpaid, and on said date and at the request of said Herman A. Newman the defendant the John J. Mitchell Company made, executed, and delivered to him three promissory notes aggregating the sum of $2,500, of which the note referred to in the complaint is one; that, of the said sum of $2,500, the sum of $1,000 thereof was a gratuity given to the said Herman A. Newman without consideration whatsoever, and that, of the said three notes, two notes thereof were given in payment of the aforesaid advance, together with the additional sum of $166.66, part of the aforesaid gratuity; that the said two notes last referred to, given in payment for the moneys so due the said Herman A. Newman, and in part for the said gratuity, were duly paid and discharged, and the said note was made, executed, and delivered to the said Herman A. Newman without any consideration whatsoever; that said obligations of the defendant the John J. Mitchell Company for payment of said sum of $1,000 was without consideration, and said the John J. Mitchell Company was without power or authority to make gifts to its employés or officers or any person, and the same was illegal and void; that the said Herman A. Newman indorsed said promissory notes in blank and delivered them to the plaintiff, who took the same without inquiry into the power of said defendant the John J. Mitchell Company to make the same; that thereafter the two notes first falling due and payable

were presented for payment and were paid in full with interest by the John J. Mitchell Company, and that the payment thereof was without power and right of the defendant the John J. Mitchell Company to make and was illegal and void, and the plaintiff had due notice thereof and received the payment.

As conclusions of law, the court found that the said note set forth in the complaint was executed and delivered without consideration, and was invalid and ultra vires the defendant; that said note by its form cast upon plaintiff the duty of inquiring of the defendant the John J. Mitchell Company as to its validity and as to all matters of defense thereto; that, by reason of not inquiring, the plaintiff is not a holder in good faith and is bound by all the infirmities therein; that the plaintiff by receiving from said defendant the John J. Mitchell Company, and upon collection of said notes the sum of $166.66, holds the sum of $166.66 to the use of said defendant as money had and received from it; and that the said the John J. Mitchell Company should have judgment against the plaintiff for the sum of $166.66. Upon that decision judgment was entered in favor of the defendant against the plaintiff, and from that the plaintiff appeals.

The defendant Herman A. Newman was called as a witness and produced the check of plaintiff, dated April 20, 1912, and made to his order, for $851.65 in payment of this note, and he testified that he received the money on the check from plaintiff. On cross-examination he testified that he had also delivered to plaintiff the other two notes before he delivered to him the note in suit, and when he delivered these notes to plaintiff he received check from the plaintiff for $1,500. The plaintiff having rested, the defendant called the president of the John J. Mitchell Company, and he said the plaintiff never made any inquiry from him in regard to the manner in which the note was issued; that Herman A. Newman was both an employé and officer of the company in the month of December, 1911; that he was vice president and employed under a contract for five years to expire on the last day of June, 1912, at a salary of $5,200 a year; that on or about September 30, 1911, he had a conversation with the payee regarding the making of the note in suit and the two other notes dated December 30, 1911; that the three notes were all made at the same time and they were all part of one transaction; that Herman A. Newman prior to the making of the notes had advanced to the company the sum of $1,500. Michael V. Quinlan, who also signed these notes as treasurer of the John J. Mitchell Company, was also called by the defendant, and testified that he was the secretary and treasurer of the company, and that Herman A. Newman received a salary from the company of $150 a week, and upon this testimony the court made the decision before mentioned.

We have here a promissory note made by a corporation, executed by its officers—its treasurer and vice president—payable to the order of its vice president, duly transferred to the plaintiff before maturity and for value, without notice of any infirmity or defense. The sole ground upon which the right of the plaintiff to enforce this note has been denied is that, because one of the officers of the corporation executing the

note was the payee, the plaintiff was put upon inquiry as to the consideration for which the note was given; it being assumed that such inquiry would have developed the fact that the payee had only advanced to the company $1,500 for which he had received notes aggregating the sum of $2,500, and that, if the plaintiff had been aware of that fact, he could not have enforced the note as against the corporation. The defendant offered in evidence the articles of incorporation of the John J. Mitchell Company, but they contained no restrictions upon the officers of the company issuing the promissory notes in the ordinary course of business, and the defendant also offered in evidence section 6 of the by-laws, but that was excluded, and, as it is not part of the record, we are without knowledge of its contents. There is, however, absolutely no proof in the case that the officers executing these promissory notes were not authorized to execute promissory notes on its behalf, no evidence that the note was not executed in pursuance of an existing contract or obligation of the company, no evidence that this note was executed without the consent of the president of the company, and nothing to show that the note was ultra vires or void.

The only testimony as to the circumstances under which this note was executed was of the president, who says that on or about September 30, 1911, he had a conversation with Herman A. Newman regarding the making of these three notes; that these three notes were all executed at the same time and were all part of the same transaction; that Herman A. Newman had given $1,500 to the company some short time prior to the making of the notes; that he gave nothing else at the time these notes were made and given to him, other than the $1,500; and that he rendered no other services other than those provided in his contract of employment. A fair inference from this is that these three notes were given to the payee in consideration of the payee's advancing to the company the sum of $1,500, that they were given with the assent of the president of the company, who was one of the board of directors and seems to have been in control of the company. I do not see how in any way this can be said to be an ultra vires or void contract. Assuming that it was a loan of money to the company for which the company had agreed to pay $1,000 interest for the use of the money, that contract was not void or ultra vires, and, if the plaintiff had been informed of that fact, when he received the notes from the payee, I do not see how it could have been a defense to the corporation. Of course, such a contract would have been grossly usurious, but the defense of usury is not available to a corporation. If the amount that was to have been paid was a bonus or interest for the loan of $1,500, no one would claim that the notes made by the corporation were void because the interest had been charged at a rate exceeding 6 per cent.; and the mere fact that the amount paid for this loan was grossly excessive could not, I think, avoid the contract to pay the loan with excessive interest.

Nor do I think that the form of this note threw upon the plaintiff any duty of inquiry. The note was executed by the treasurer and vice president of the company. There is nothing to show that the treasurer was not a proper person to sign promissory notes on the part of the

corporation, nothing to show that a promissory note signed by him without the signature of the vice president would not be a binding obligation on the corporation, and nothing to show he was not authorized to execute promissory notes binding on the corporation. It did appear that the payee was an officer of the corporation, or, in other words, the corporation had agreed to pay to the payee, in three installments of $833.34, the sum of $2,500 in six months. Certainly the officers of a corporation are not prevented from loaning money to it and taking therefor obligations from the corporation for money so loaned to it. The fact that an officer of a corporation has in his possession a note of the corporation, payable to his own order, carries with it no presumption of illegality or lack of consideration. The corporation is authorized to give to its officers obligations for money due to it, and the payee of the obligations of a corporation, payable to one of its officers, is under no greater duty of inquiry as to the validity of the obligation than if the instrument were payable to a third party.

My Brother LAUGHLIN concedes that the authorities on which the defendant relied (Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585, and Wilson v. Met. Elev. R. R. Co., 120 N. Y. 145, 24 N. E. 384, 17 Am. St. Rep. 625) do not apply. But I think the whole trouble with the defendant's case is that, to hold this note void, we must assume a fact that was not proven, i. e., that there was no consideration for the note in suit. The form of the note itself imports consideration. As between the plaintiff and the defendant, the burden would have been upon the defendant to show there was no consideration. What the defendant has shown is that there was a loan to the corporation of $1,500, and for a sum in excess of that amount the notes were given; there being no evidence of the terms of the agreement. I can see nothing in these facts to overcome the presumption of consideration, and nothing to prevent a bona fide holder for value and before maturity from enforcing the note because he made no inquiry as to consideration from the payee to the maker at the time the note was given. Consideration of a negotiable instrument is presumed. No fraud is alleged, no misappropriation of funds is charged, no lack of power to sign the notes is pleaded. The simple fact is that, when the three notes were given aggregating the sum of $2,500, the payee had paid to the company for these notes $1,500. It may be that the payee would be responsible to the company for the excess between the amount the notes called for and the amount that the payee paid actually to the corporation for them. But that is not a defense to the note when held by a bona fide holder before maturity and for value; for, if he had known that the sum of $1,500 was all the payee had paid to the corporation at that time, he was justified in assuming that the corporation's vice president would account to the corporation for any additional amount he had received for the notes.

The plaintiff certainly had the right to assume that the vice president, who had received the note from the company, had either paid to the maker the consideration therefor, or would account to it for the amount that he had received. Assuming—a fact which is not proved—that the note was not issued in pursuance of a valid contract between the payee

and the corporation, by which the amount of the three notes was due and owing to the corporation by the vice president, there was nothing in the form of the note, or in the transaction as it appeared upon its face, that threw the burden upon the plaintiff of inquiring as to just what the payee had paid for the note, or how much of it he had accounted for to the corporation of which he was vice president. But, certainly, on no theory could the defendant recover the amount that the plaintiff had received on the two promissory notes that had been paid in full before the trial and in excess of $1,500. These notes were duly issued by the defendant, were presented to the defendant, and the defendant duly paid them. There was no fraud or duress, but a purely voluntary payment which certainly the defendant could not recover back. All of the facts were known to the defendant when they paid these notes. The first note was payable April 20, 1912, and it seems to have been paid April 22, 1912. The second note was payable May 20, 1912, and it seems to have been paid May 22, 1912. The note in suit was purchased from the payee by plaintiff; and his check to the payee is dated April 20, 1912, the date on which the first note was payable. There is no evidence that the plaintiff had any knowledge of the defense to these notes when they were paid. The defendant had all the knowledge it has now at the time of the payment of the notes. It was clearly a voluntary payment, and by the plainest principles of law the defendant was not entitled to recover any amount thus paid to the plaintiff.

I think therefore the judgment appealed from should be reversed, and judgment directed for plaintiff for the full amount of the note, with interest, and with costs in all courts.

McLAUGHLIN, J., concurs.