THE BANK OF THE UNIVERSITY *vs*. HAMILTON *et al*.

Where a promissory note signed by R., "ag't," was made payable to H., "pres't," and was indorsed by H., "president Princeton Factory," and in a suit by the indorsee against the maker, H. individually, and the factory, it was alleged, in addition to the statutory form of suit on the note, that the maker was the agent and H. the president of the factory, and that the money borrowed from the plaintiff and for which the note was given, was received and used by the corporation, and it undertook and promised to pay the plaintiff:

*Held*, that the suit against H. individually was demurrable, the liability sought to be enforced being that of the corporation and not of its president individually.

(*a*) The declaration showing on its face that the agency of the president was known and that credit was extended to the principal, there being no allegation that credit was expressly extended to the agent, there was no issue which required submission to the jury.

(*b*) Prior to indorsing the note payable to his order, no liability arose against the payee; and when he indorsed it, the terms of such indorsement determined the contract between the indorser and indorsee, and the indorser could limit his liability by the terms thereof.

December 7, 1886.

Principal and Agent.   Promissory Notes.   Indorsement.
Contracts.   Before Judge HUTCHINS.   Clarke Superior
Court.   April Term, 1886.

Reported in the decision.

ALEX. S. ERWIN; GEO. D. THOMAS, for plaintiff in error.

L. & H. COBB; POPE BARROW; R. B. RUSSELL, for defendants.

JACKSON, Chief Justice.

This suit is brought against Russell as maker, Hamilton as indorser, and the Princeton Factory, by the Bank of the University, on the following note:

"$5,000.00.                        ATHENS, GA., Jan. 23d, 1885.
        "Sixty days after date, I promise to pay to the order of Jas. S. Hamilton, pres't, five thousand dollars, at the Bank of the University, value received, with interest at the rate of 8 per cent. per annum after maturity, and ten per cent. attorney's fees if this note should be sued. And we, whether maker, endorser, or security, do hereby, each and severally, waive and renounce for ourselves and families, respectively, all homestead or exemption of rights as to both realty and personalty, that we may have under the constitution and laws of this State or of the United States, as against this debt or any renewal of it.
No. 6364.                              WM. J. RUSSELL, ag't."
Endorsed as follows: "Waive protest and of notice of protest.
                J. S. HAMILTON, President Princeton Factory."

The form of action is that prescribed in the statute with additional averments "that the endorsement was made at the time the note was given, and the waiver of the protest was made at maturity by J. S. Hamilton, endorser," and "that at the time of the making of said promissory note, said Wm. J. Russell was the agent and James S. Hamilton the president, of said Princeton Factory; that they had authority to make contracts for said corporation, and the cash money borrowed from your petitioner, and for which said note was given, was received and used by said Princeton Factory; and the said Princeton Factory undertook and promised to pay said note," and failed and refused to pay the same.

Hamilton demurred to the declaration on the ground

that it is insufficient in law to recover against him; that the signature by which it is sought to recover against him is as president of the Princeton Factory, and not individually as he is sued here; and that it is sought to bind him individually as indorser in one count, and in the other to bind the Princeton Factory as a corporation by the same signature that the bank claims makes him, Hamilton, individually liable. The court sustained the demurrer and dismissed the action as to Hamilton and this judgment is the error assigned.

By the statute of this State, code, §2211, it is enacted that "where the agency is known, and the credit is not expressly given to the agent, he is not personally responsible upon the contract. The question to whom the credit is given is a question of fact to be decided by the jury under the circumstances of each case." This declaration on its face shows that the agency was known. There is no allegation that the credit was expressly given to Hamilton individually, and therefore by this statute he is not responsible upon this contract. There is no issue of fact to go to the jury by virtue of the last clause of this section of the code, to test the question to whom the credit is expressly given. It is alleged in the declaration that the money was borrowed for the factory and used by the factory, and that Russell, the agent, and Hamilton, the president, had authority "to make contracts for said corporation," and (thereby) the Princeton Factory undertook and promised to pay it. The only place anywhere in or upon the note that exhibits the name of the Princeton Factory at all, is the place where Hamilton endorses the note distinctly and expressly as "President, Princeton Factory." So that so far from the credit being expressly given to him individually as endorser, it is expressly given to the factory by the very indorsement that alone gives the bank title to the note and the right to bring suit upon it. The bank, therefore, could not possibly have given credit to him individually without contradicting the very indorsement that confers upon it

the title to sue.   To send the case to the jury on any out-
side proof of such credit, if there be such, would be to open
an attack upon the right of action of the bank itself, in
writing, by parol evidence flatly contradicting the written
indorsement and foundation of the suit.

But it is argued that the section 2211 of the code has
no application to the law-merchant, and promissory notes
the offspring of that law; and that Hamilton having been
designated as " Pres't," merely when made the payee by
the face of the note, was responsible individually, because
he could not by the endorsement explain what that term
" Pres't " meant; and when he turned over the note to the
bank by his endorsement and gave them the control of
the paper and title to sue it, he could not then limit his
liability and endorse only as president.   We cannot see
the logic of any such conclusion, nor do we think that any
such point has ever been adjudicated, even under the laws
governing commercial paper unaffected by statute, as it
is here, by the allegation that Hamilton and Russell had
power to contract for the corporation, and did so, and
thereby borrowed the money for the corporation that used
it.

But consider the statute out of the case, what liability
upon earth was there upon Hamilton until his endorse-
ment of the paper?   Is he liable because the paper was
made payable to his order before he put it in circulation
by ordering it paid to the bank and to that end endorsing
it?   Most clearly not, by any law common, or merchant, or
statute, of which we have ever heard.   When he did thus
endorse, could he not limit his own liability by endorsing
on any terms he saw fit, and when the bank took it on those
terms, is it not bound by them?   Most clearly, we think, if
the terms of an endorsement in a suit by the endorsee
against the endorser be the contract that binds the two.
If the law-merchant be the contrary,—but it is impossible,
and I shall not conclude the sentence I began to write.
Wherever this paper thus endorsed travels, in whatever

hands it is found, it carries with it on its back the fact that Hamilton is bound only as president of the corporation.

But this is a contract, by the allegations of the declaration. The note is annexed in full, as required by the statutory form, and is part of the declaration. The president of the Princeton factory negotiates a loan for that factory upon this note payable to his order as "Pres't," and contracts with the bank to endorse it as "President Princeton Factory;" and thus, to give the bank title to this note for loan to the factory of the amount of money in the face of the note, the bargain is made. All eyes are open to the plain contract. The Princeton Factory doubtless is shaky if not broken, and the bank turns its attention towards Hamilton in his individual character, and with his private property demands that he do what he told them in writing he would not do, to-wit, pay the note out of his own pocket.

To lovers of justice and right between man and man— the last man being a corporation—it will appear a good thing that the laws of Georgia will enforce the contract as made, and require the corporation to look for its money where it gave the credit.

Judgment affirmed.