## McCRORY *v.* GRANDY & SON.

| 92 | 319 |
| 96 | 472 |
| 92 | 319 |
| 103 | 746 |
| 92 | 319 |
| f112 | 834 |
| 92 | 319 |
| 117 | 399 |
| 92 | 319 |
| 122 | 670 |
| 92 | 319 |
| 128 | 82 |

1. A married woman may borrow money for the exclusive benefit of any person other than her husband, and bind her separate property for its payment. The knowledge of the lender of her object in borrowing and of the use intended to be made of the money, will not affect the validity of the transaction. If, however, the relation of debtor and creditor is established between the lender and the third person, the form given to the writings executed touching the loan and the security for the same being a mere device to cover up a real case of suretyship on the part of the married woman, her contract will not be obligatory.

2. That a case of suretyship was contemplated when the loan was first applied for and assented to, will not vitiate the final transaction, if on discovering that the first design conflicted with the law it was abandoned and an actual lending to the married woman herself was substituted therefor.

3. Due diligence on the part of counsel conducting the trial of a cause requires, that if a written instrument purporting to be signed by their client is offered in evidence and counsel do not know it to be genuine, they should object and require proof of its execution. If they fail in this, and the paper be admitted without objection, the subsequent discovery that it is not genuine will not be cause for a new trial, unless it appear that the party who introduced it or his counsel knew or had reason to believe that it was spurious.

4. While the court seems to have committed error in admitting certain letters in evidence, the error was harmless in view of the con-

trolling facts, and is no cause for a new trial. All the answers to certain interrogatories being objected to as inadmissible because the witness derived his information from correspondence, over-ruling the objection is not cause for reversing a judgment denying a new trial, where it appears from the answers that some of the witness's information pertinent to the case was not so derived but was matter of personal knowledge. More especially is this true where none of the evidence of the witness is set out in the motion for a new trial.

July 24, 1893.

Complaint on promissory note. Before Judge MILLER. Talbot superior court. March term, 1892.

Grandy & Son sued Mrs. Jane Y. McCrory upon a note for $1,200 principal, dated March 30, 1888, upon which there were certain credits. She pleaded, that the note was given to secure a debt for advances made to Ellis & McCrory, a firm composed of J. C. Ellis and J. C. McCrory, and at the time it was given and the contract made she was a married woman, her husband being L. M. McCrory; that Ellis & McCrory applied to plaintiffs for a loan, and asked her to stand their security; that the money was loaned to them, and she did not receive any part of it or any benefit from it, nor did it go to the benefit of her separate estate, but was for the benefit exclusively of Ellis & McCrory and she was their security, at the time owning a separate estate, which facts were all known to plaintiffs. There was a verdict for plaintiffs, and defendant's motion for a new- trial was overruled.

1–2. Error is assigned on the refusal of the court to charge thus: (a) "If Grandy & Son were on notice that this money to be borrowed was for the exclusive benefit of Ellis & McCrory, and the note and deed made by Mrs. J. Y. McCrory was to secure this money loaned to Ellis & McCrory, and she secured no benefit from said loan, then she is not bound by said contract and they could not recover." (b) "If the correspondence in negotiating

the loan was carried on by Ellis & McCrory with Grandy
& Son, and Ellis & McCrory paid the lawyers their fees
at Norfolk and in Talbotton, and Mrs. McCrory em-
ployed no lawyers and paid no fees for drawing the pa-
pers upon which the loan was obtained, then this is a
strong circumstance to look to in determining whether
Mrs. McCrory borrowed the money in her own right or
for Ellis & McCrory and was only security for Ellis &
McCrory." (c) "If Ellis & McCrory induced Mrs.
McCrory to borrow this money from Grandy & Son for
their use and benefit, and Grandy & Son knew it was for
the use and benefit of Ellis & McCrory, and knowing
this loaned the money and for that purpose, then they
could not recover, and the taking of the deed and note
in the individual name of Jane Y. McCrory would be
only a device to evade the law." (d) "Should you find
that Ellis & McCrory opened negotiations with the plain-
tiff, for the loan of money for their use upon the security
of Mrs. Jane Y. McCrory, and that she was a married
woman, and that the plaintiff knew that she was a mar-
ried woman, then the plaintiff could not change the
operation by loaning them the money for the same pur-
pose, receiving in lieu of Ellis & McCrory's note with
Mrs. McCrory as security the individual note of Mrs.
McCrory. Was the money actually loaned and intended
as an accommodation to Ellis & McCrory, with full knowl-
edge on the part of the plaintiff and Mrs. McCrory that
it was intended to be used for the benefit of Ellis &
McCrory, and not for the benefit of Jane Y. McCrory,
and that the change was made in manner before stated
as a substitute in lieu of the original note first offered?
Then you should find for the defendant. The law will
not countenance any artifice or contrivance to evade the
provisions of the law to protect married women from
encumbering their estates by being security for others."
(e) "If Ellis & McCrory opened negotiations with Grandy
v 92-21

& Son to borrow money and tendered Jane Y. McCrory
as security, and she signed a mortgage on certain lands,
and specified in said mortgage that it was to secure a
debt of Ellis & McCrory, and signed a note jointly with
J. C. Ellis and James T. McCrory, partners composing
the firm of Ellis & McCrory, and the plaintiff declined
to loan money on that paper, and so notified them and
sent the mortgage and note to Willis & Persons, attor-
neys selected by Grandy & Son, and they drew a deed
and note, and Mrs. McCrory signed it individually, and
the same identical lands were embraced in the deed that
were embraced in the mortgage, then this is notice to
Grandy & Son that Mrs. McCrory was security, and
they could not recover, and that it was a continuous
contract between Grandy & Son and Ellis & McCrory,
the one to loan the money on Mrs. McCrory's security
and the other to borrow the same way." Further as-
signments of error are upon the following instructions
given to the jury: (a) "If a negotiation had been go-
ing on between the plaintiffs and Ellis & McCrory to
borrow money and the plaintiffs had declined to loan to
them on the security offered, and afterwards the defend-
ant, Mrs. McCrory, borrowed from plaintiffs the money
sued for and loaned it to Ellis & McCrory, the plaintiffs
would be entitled to recover, although they may have
known she was going to let Ellis & McCrory have the
money." (b) "Now, furthermore, upon that, she would
be authorized to do that through an agent. If in fact
she intended to bind herself, she might not see the men
or the bank from whom she desired to borrow. She
could go to some relative or to some stranger, or to any
person that she might select to go and negotiate the loan
for her, or to buy goods for her. She might send word
by some agent that the purchase was not for herself, nor
to be of any benefit to her; that the money borrowed was
to be for somebody else; but if the contract, whether

made by herself or by the agent, either to borrow the money or to buy the goods, upon her own responsibility, she would be bound. It would also be true, that although she might arrange with the person who did furnish the goods or the money that they might pay the debt of another, that would not alter her liability, if her original contract was to create the debt binding upon herself and for herself." (c) "Now, in this case the plaintiffs' theory of it is this: that they undertook to negotiate with Ellis & McCrory to loan them some money upon Mrs. McCrory becoming their security; that they found out under the law of Georgia that that could not be done, she could not legally bind herself; that they abandoned that negotiation and did find that she could bind herself on her own responsibility; that they made a new trade, letting Ellis & McCrory stand aside; and that they loaned her the money, knowing that it was to be used by Ellis & McCrory; and that they made with her an independent contract by which they gave up the claim on Ellis & McCrory; didn't look to them, but looked to Mrs. McCrory, taking her note and taking a deed to her land to secure that indebtedness; that the money was loaned to her. That is their theory of this case. Now, if you believe this transaction, that that is the truth of the case, she is bound, she ought to pay the money, and you ought to find against her and in favor of Grandy & Son, if you believe that this is the truth of this case under the evidence." (d) "As I said in stating the general principles in the case, it was entirely competent for Grandy & Son to make a trade with Mrs. McCrory through Ellis & McCrory as her agent. They were not obliged to have actual interviews with her, or actual correspondence with her. If she knew what was going on, or if she acted through them, being moved by reason of her own to contract this debt, why she would be bound just as though she had gone in person to Grandy & Son and made the loan."

3. Another ground of the motion is for newly discovered testimony. In support of this ground was produced the affidavit of defendant, to wit: She has examined the original order, of which the following is a copy: "Talbotton P. O., Talbot county, Ga. March 31st, 1888. Mess. Grandy & Sons : Will please let Ellis & McCrory have the money by draft as they order it, and this will be your receipt for the same. Jane Y. McCrory." She never saw this order until exhibited to her on March 31, 1892 (after the verdict). She never signed it nor authorized any one to sign it for her. Neither the signature nor the body of the paper is in her handwriting. She was never called on by plaintiffs or any one for them to give this order. She was not aware until the trial of the case that such a paper was in existence, or that plaintiffs claimed to hold an order of any kind signed by herself, and the fact that plaintiffs had the order and that her name appeared on it only came to her knowledge since the trial. She was not at the trial, as she testified by interrogatories. She used due diligence to discover evidence and prepare for trial, and it was impossible for her to anticipate that the order would be used, as it is a forgery, and she had no reason to believe that such paper would be used. Its use was a great damage to her.—Also, the affidavits of her attorneys as to their diligence in preparing for trial, and that they never saw the order until during the trial, when it was tendered in evidence, nor had they heard of it, but when it was tendered, thought it was the act of their client, she not being present, until after the trial when she informed them she had not signed it, nor had ever authorized any one to do so for her.

4. Other grounds assign error upon the admission in evidence of two letters written by J. J. Bull to plaintiffs, over defendant's objection that the relation of attorney and client existed at the time. In answer to a question

by the court, Mr. Bull stated: "It was written for the purpose of trying to get an affidavit from these parties to show that McDowell & Ellis had assumed the debt that Ellis & McCrory had made. This suit had not been brought, and I had nothing to do with it, and in fact did not know that it would be." Also, in not sustaining defendant's motion to rule out these letters, upon the ground that they showed Bull was not representing defendant in this transaction, and he having stated in open court that he was not employed to defend therein. Also, in permitting plaintiffs' counsel to read to the jury the interrogatories of A. H. and C. W. Grandy, over defendant's objections. No part of the evidence referred to is set forth in the motion for a new trial. One of the two letters in question (as shown by the brief of evidence) was dated May 21, 1889, and stated that in the spring of 1888, Bull's client, Mrs. McCrory, borrowed from plaintiffs $1,200 and loaned the same to Ellis & McCrory; that she was trying to make her money she borrowed from plaintiffs and loaned the firm; and that Bull wrote to ask if plaintiffs could give him any information touching the matter, whether or not they gave any bond to Ellis & McCrory, and if plaintiffs could give Bull a statement as to the condition of Ellis & McCrory. The other letter was dated May 31, 1889, and stated that the information Bull's client, Mrs. McCrory, sought of plaintiffs could not be furnished by their attorneys unless they had plaintiffs' books or a transcript of them; that the statement made in regard to McDowell & Ellis was to show plaintiffs why the information was sought; that it would be a surprise to Bull's client to know that plaintiffs had employed attorneys to collect the money out of her when no payment had been demanded, and if this was the stand they took in the matter it was their lookout; and Bull desired to say he was not employed by Mrs. McCrory to defeat or defend,

hinder or delay the collection of the money she was due plaintiffs. The grounds of objection to the interrogatories were, that the answers thereto showed that the negotiations for the loan were by letters, and no letter from defendant offering to borrow money was attached or produced, nor did it appear that any had been received which was lost or destroyed; and that the correspondence would be the highest evidence of what took place between the parties. From the brief of evidence it seems that the answers covered some matters knowledge of which was not derived from correspondence.

J. J. Bull and J. H. Worrill, for plaintiff in error.
Willis & Persons, by Morgan McMichael, *contra.*

Simmons, Justice.

The firm of Ellis & McCrory, desiring to borrow money, wrote to Grandy & Son, of Norfolk, Va., for that purpose, and proposed to give as their security for the loan Mrs. Jane Y. McCrory, the mother of one of the firm. Grandy & Son agreed to make the loan on this security; but upon advising with attorneys in this State, they were informed that Mrs. McCrory, being a married woman, could not bind herself as security; and it was then arranged that Mrs. McCrory should borrow the money from Grandy & Son in her own name, she giving her note for the amount borrowed, and making the lenders a deed to certain land, her separate estate, to secure the payment of the note. Grandy & Son knew that she intended to lend the money to Ellis & McCrory, she having given an order to Grandy & Son to let Ellis & McCrory have the money on their draft. Ellis & McCrory drew on the fund thus borrowed by Mrs. McCrory, until it was exhausted. When the note fell due, Mrs. McCrory refused to pay it, and suit was brought thereon by Grandy & Son. To this suit she pleaded that the debt for which the note was given was not her own, but was

the debt of Ellis & McCrory, and that she was simply a security, and being a married woman, was not liable thereon.   On this state of facts several requests to charge were made by her counsel, which are set out in the report prefixed to this opinion.   She made a motion for a new trial on the several grounds set out therein, which was overruled by the court, and she excepted.

1–2. Under our code, section 1783, there are three things which a married woman having a separate estate cannot lawfully do.   She cannot bind her separate estate by any contract or suretyship, nor can she assume the debts of her husband, nor sell her separate estate to a creditor of the husband to extinguish his debts.   If she should do any of these things, the transaction would be absolutely void.   These are the only restrictions put upon her in dealing with her separate estate, and outside of them, she stands upon the same footing as a man or a *feme sole*.   She can borrow money and pledge her separate estate for the payment thereof, and can lend the same money to her son, or to a firm of which he is a member, and the knowledge of the lender that she is borrowing the money for this purpose will. not affect the validity of the transaction.   *White* v. *Stocker*, 85 *Ga.* 200.   Of course, all this must be done in good faith. She must be the real debtor to the lender.   If the relation of debtor and creditor exists between the lender and a third person, and a married woman is made the ostensible debtor, she would be nothing but a security, and the note would be void, although the writings executed by her to secure the debt are signed only by her.   This would be a device to cover up a real case of suretyship on her part.   See the reasoning in the case of *Schofield* v. *Jones*, 85 *Ga.* 820.

If the original negotiations contemplated that a married woman should be security simply, and the lender, upon ascertaining that she could not lawfully bind her-

self as security, declines to lend the money, she could renew the negotiations, either by herself or her agent, and borrow the money in her own name with the purpose of lending it to the original applicant for the loan; and if the money is lent to her, and she becomes the real debtor to the lender, she will be liable therefor just as if she had commenced the original negotiations for herself. Where she is the principal debtor, she is upon the same plane as a man with regard to her separate estate, and is equally bound upon her contracts. These views cover the requests to charge on this subject, and the exceptions to the charge as given.

3. Pending the trial the plaintiffs introduced in evidence an order to them purporting to be signed by Mrs. McCrory, authorizing them to let Ellis & McCrory have the money which she had borrowed, upon their drafts. This paper was not objected to by the defendant's counsel, nor was proof required of its execution. After the trial, when the order was shown to the defendant, she denied its genuineness, and made an affidavit that she had not signed it or authorized any one to sign it for her, and this is made a ground of the motion for a new trial, upon the theory of newly discovered evidence, it appearing from this ground and the affidavit in connection with it that Mrs. McCrory was not present at the trial. We think, where counsel is conducting the trial of a case, and a paper is offered in evidence by the other side, and counsel does not know whether it is genuine, due diligence requires that he shall demand proof of its execution. If he fails to do this, and allows the paper to go in evidence without objection, and after the trial it is discovered that the paper is a forgery, this discovery will not be cause for a new trial unless it also appears that the opposite party or his counsel knew or had reason to believe that the paper was not genuine.

4. The other grounds of the motion are sufficiently covered by the fourth head-note. *Judgment affirmed.*