### McRITCHIE *v.* ATLANTA TRUST COMPANY.

No. 7376. MARCH 18, 1930. REHEARING DENIED APRIL 19, 1930.

*Sidney Holderness* and *Watkins, Asbill & Watkins,* for plaintiff.
*Jones, Evins, Powers & Jones,* for defendant.

HINES, J. A deposit account in the name of T. B. McRitchie, agent for Mrs. Annie A. McRitchie, was opened in the Manufacturers National Bank of Newnan on September 26, 1924, and was continued through 1926. The plaintiff is the wife of McRitchie,

and claims that this was her individual account and that the funds deposited therein were her funds. Her husband was indebted to the defendant on a joint note of himself, William Gunn, and W. E. Small, for $150,000 or other large sum. On January 15, 1925, her husband drew on said account in said bank a check in favor of the defendant for $2298. This check was signed by the husband with the word agent after his signature. On June 7, 1925, the husband drew another check for $1798.34 on this account in favor of the defendant. This check was signed by the husband in his name, with the word "agent" after his signature. Both of said checks were collected by the defendant and applied in payments upon the above indebtedness of the husband to it. On July 15, 1926, the husband drew as her agent a check on said account for the sum of $2065 in favor of the defendant. This check was signed by "T. B. McRitchie, Agt. for Mrs. Annie A. McRitchie." This check was collected by the defendant, and the proceeds thereof applied on the above indebtedness of the husband to it. Plaintiff asserts that the defendant received the money represented by said checks with the knowledge that it was her funds and that the same was without her knowledge and consent applied as payments on the said indebtedness of her husband to it. Plaintiff had an account in her own name in the First National Bank of Newnan during the years 1924 to 1927, inclusive. During that period she deposited in that account the total sum of $42,685.48. On February 10, 1927, plaintiff drew her check for $1990 on the last-named bank, payable to the order of defendant. This check was collected by the defendant and applied to the payment of the above indebtedness of the husband to it. The defendant admits that it received this check and applied the proceeds thereof to the payment of the husband's indebtedness, but denies that it was paid from funds of the wife. On July 29, 1925, plaintiff alleges that she borrowed from the defendant the sum of $13,000, and secured the same by pledging to defendant certain certificates of stock owned by her. The note given for this loan on its face appears to be the joint note of plaintiff and her husband. The proceeds of this loan, less the discount, were deposited to the joint account of plaintiff and her husband in the defendant bank; but the wife claims that the money belonged to her, and was known to the defendant to belong to her. A signature card signed by the wife and husband on July 30, 1925, was

given to the defendant. This card recites that the above account is a joint account, and that the defendant is thereby authorized to pay funds on this account to either party or the survivor. On January 11, 1926, the husband drew his check on this account for $2180, payable to defendant. This check was cashed by defendant and the proceeds applied to the husband's indebtedness to it. On July 15, 1926, the husband drew two checks on said account, one for $905 and the other for $55, in favor of the defendant, and the proceeds were applied by defendant as payment on his said indebtedness to it. In the present suit the wife asserts that the defendant is liable to her for the several amounts of her money so received by it in payment of the indebtedness of her husband, with interest, after deducting the amount of said loan to her, represented by said note of herself and husband. She prays that the defendant be enjoined from selling the collateral pledged by her to secure it, which it threatens to sell; and that she have judgment against it for the amount so due her.

In its answer the defendant admits that the husband delivered to it the checks dated January 15, and June 7, 1925, signed as alleged by the plaintiff, but denies that it had any notice or knowledge that the checks were drawn on funds of plaintiff and that the funds were hers. Upon information and belief it alleges that if the account in the Manufacturers National Bank of Newnan stood in the name of plaintiff, the portion thereof equal to the amount of said checks consisted of money deposited therein by and belonging to her husband. Defendant further admits that the husband issued and delivered it to. the check of July 15, 1925, and that the same was drawn and signed as alleged, but denies that the funds on which it was drawn were those of the plaintiff. The defendant likewise admits that on July 29, 1925, it loaned to plaintiff and her husband the sum of $13,000 upon their joint note, secured by collateral as alleged, and that the proceeds thereof were deposited as alleged. It denies that the proceeds of said loan belonged to plaintiff. The defendant likewise admits that the husband drew and delivered to it the check of January 11, 1926, and that the proceeds thereof were paid on the indebtedness of the husband. It denies that it knew that said money belonged to plaintiff, but says that it was the money of the husband. Defendant admits that on July 15, 1926, the husband gave to it the two checks of that date, as alleged, and

that the proceeds thereof were applied to said indebtedness of the husband, but denies that they were drawn on funds of the plaintiff, but says that they were drawn on funds deposited in said account by the husband on the day said checks were drawn. By way of counter-claim the defendant alleges that the plaintiff is indebted to it in the sum of $9,587.44 upon the said note for $13,000, with interest from December 19, 1927, and attorney's fees, and prays judgment against her for these amounts.

The jury returned a verdict in favor of the defendant. The plaintiff moved for a new trial upon the general grounds and upon certain special grounds to which reference will be hereinafter made. Each side contends that a verdict was demanded in its favor. The plaintiff contends that a verdict should have been rendered in her favor at least for the amount of the two checks drawn in favor of defendant, one for $2065, dated July 15, 1926, and drawn on the Manufacturers National Bank of Newnan by "T. B. McRitchie, Agt. for Mrs. Annie A. McRitchie," and the other for $1990, dated February 10, 1927, drawn by her on the First National Bank of Newnan, the proceeds of which were received by defendant and applied on said indebtedness of the husband to it. On the other hand the defendant claims that a verdict in its favor was demanded under the law and the evidence. The bases of this connection will be hereinafter more fully dealt with.

■ "A creditor who receives in payment money belonging to his debtor's wife, knowing it to be her separate estate, acquires no title to it as against her, whether she consent to the payment or not. The Code, in declaring a sale void when made by the wife to a creditor of the husband in payment of his debt, comprehends, in its reason and spirit, a transaction in money as well as a transaction in property." *Humphrey* v. *Copeland*, 54 *Ga.* 543. The ruling in the case just cited has been followed in many other decisions of this court. *Boyd* v. *Chappell*, 56 *Ga.* 22; *Kent* v. *Plumb*, 57 *Ga.* 207; *Chappell* v. *Boyd*, 61 *Ga.* 662; *Maddox* v. *Oxford*, 70 *Ga.* 179, 184; *Lewis* v. *Howell*, 98 *Ga.* 428 (25 S. E. 504); *Grant* v. *Miller*, 107 *Ga.* 804, 806 (33 S. E. 671). So if the defendant bank received in payment on the indebtedness of the husband, by means of the checks hereinbefore referred to, money belonging to the wife, knowing it to be her separate estate, the defendant bank acquired no title to it as against the wife, whether she con-

sented to the payment or not; and she could set off the same against the joint note of herself and husband held by the defendant.

■ This brings us to consider the checks of January 15 and June 7, 1925, more specifically referred to above, and which were drawn by the husband on the Manufacturers National Bank of Newnan, and signed by the husband with the word "agent" after his signature. In her petition the wife alleges that the defendant received from her husband the moneys represented by these checks in payment of the husband's indebtedness to it, knowing that said moneys so received belonged to her. This contention is denied by the defendant. "An instrument signed by one as agent, trustee, guardian, administrator, executor, or the like, without more, is the individual undertaking of the maker, such words being generally words of description." Civil Code (1910), § 3570. That section was taken from the decision of this court in *Crusselle* v. *Chastain*, 76 *Ga.* 840, where it was ruled that "The addition of the word 'trustee' after the name of the signer of a note, without more, is mere descriptio personæ, and the debt is that of the maker individually. 3 *Ga.* 283; 51 Id. 482." The principle embodied in this section of the code was first announced by this court in *Cleaveland* v. *Stewart*, 3 *Ga.* 283, in which a paper in the language, "We, the Trustees of Oakchumpna Academy, promise to pay A. C. Cleaveland, or order, six hundred dollars," and which was signed by the makers individually, was the individual liability of the makers, and that the words "Trustees of" were mere words of description. Again in *Graham* v. *Campbell*, 56 *Ga.* 258, this court held that "If an agent make a note in his own name, and add to his signature the word 'agent,' and there is nothing on the note to indicate who is the principal, the agent will be personally liable just as if the word agent were not added." This principle was again announced in *Burkhalter* v. *Perry*, 127 *Ga.* 438 (56 S. E. 631, 119 Am. St. R. 343), together with an exception to this general rule. The general principle is applicable to checks drawn by one with the word "agent" or other like term after his signature. So a deposit in a savings bank made in the name of "W. P. S., Surrogate," is the individual deposit of S., and the same could be withdrawn by his administrator, since it must be regarded as a mere personal deposit. Scudder *v.* Trenton Sav. Soc., 58 N. J. Eq. 154 (43 Atl. 3). So where a cashier opened an account in a bank in his name as cashier,

the addition of the word "cashier" to his name did not affect the character of the deposit as between the bank and the depositor. Nolting *v.* Commonwealth National Bank, 99 Va. 54 (37 S. E. 804). So where money is deposited in a bank by C. as "atty," if the bank has no other information as to the ownership of the fund than that indicated by the designation "atty," it will be justified in paying the money over to an officer levying an attachment against C. Cunningham *v.* Nampa Bank, 13 Idaho, 167 (88 Pac. 975, 121 Am. St. R. 257, 10 L. R. A. (N. S.) 706). In Sparrow *v.* State Exchange Bank, 103 Mo. App. 338 (77 S. W. 168), it was held that the addition of the word "administrator" to the name of the depositor would not be sufficient, in the absence of other facts, to apprise the bank of the fiduciary character in which the fund was held; and that it might be applied by the latter in satisfaction of the individual indebtedness of the depositor to it.

So the two checks above referred to, drawn by the husband and signed by him with the word "agent" added to his signature, without more, were the individual checks of the husband, and did not put the payee upon notice that they were drawn on funds which did not belong to the husband; nor did such signature to these checks impose upon the payee the duty of inquiring whether they were drawn on the funds of the drawer or funds of some one else. But the wife alleges in her petition that the defendant received these checks with notice and knowledge that they were drawn on her funds, and with such knowledge applied the proceeds to the indebtedness of her husband. On the trial she testified that the defendant knew that the money borrowed from it on the joint note of herself and husband was her fund, that her husband was her agent, and that that money was borrowed on her stock. In reference to the checks on the Newnan Bank, she testified that they had notice that her husband was her agent, that an investigation by that bank would have disclosed that it was her money. The husband testified that the Manufacturers National Bank of Newnan kept the account and knew whose account T. B. McRitchie, Agent, was, because he told them when he made the original deposit. This evidence does not sustain the allegations of the petition that the defendant had notice or knowledge that these two checks were drawn on funds of the wife in the Newnan Bank. This being so, the verdict was demanded in favor of the defendant as to these two checks.

■ We come next to consider the check of July 15, 1926, for the sum of $2065, in favor of defendant, and signed by "T. B. McRitchie, Agt. for Mrs. Annie A. McRitchie." The defendant insists that this check stands upon the same footing as the two just dealt with, and that a finding in favor of it was likewise demanded by the evidence. We can not agree to this contention. We have seen that a check drawn by one with the word "agent" following his signature is to be regarded as the check of the party signing it, and, without more, would not put the payee of such check upon notice that it was drawn upon funds other than those of the party signing the instrument. But where in the body or on the face of the instrument the agency is distinctly specified and the principal indicated, and the contract is substantially in the name of such principal, the latter and not the agent will be regarded as the maker of the instrument, though the instrument be signed by the agent only, provided, of course, the agent has authority to bind the principal. *Tiller* v. *Spradley*, 39 *Ga.* 35; *Rawlings* v. *Robson*, 70 *Ga.* 595; *Martin* v. *Lamb*, 77 *Ga.* 252 (3 S. E. 10); *Bank of University* v. *Hamilton*, 78 *Ga.* 312. The signature to the check in question is upon its face the signature of the principal, signed for her by her agent. It is the check of the wife signed by the husband. It is signed by the husband as agent for his wife, the latter being named. In these circumstances it is in effect and in fact a check drawn by the wife upon an account kept in the bank in the name of the husband as agent for the wife.

Is a check so drawn and signed, when drawn upon an account in a bank so kept, notice to the payee that it is the wife's check drawn on her funds? Actual notice to one is such as is positively proved to have been given to him directly and personally, or it is such as is presumed to have been received personally because the evidence within his knowledge was sufficient to put him upon inquiry. *Jordan* v. *Pollock*, 14 *Ga.* 145 (4); *Johnson* v. *Dooly*, 72 *Ga.* 297; *Hunt* v. *Dunn*, 74 *Ga.* 120, 124. In Gerard *v.* McCormick, 130 N. Y. 261 (29 N. E. 115, 14 L. R. A. 234), it was held that "The words 'Agt. Glass Buildings,' added to the signature to a check, are enough to put one who receives it in payment of a debt from the signer on inquiry as to his authority to use the fund for such payment." In Newman *v.* Newman, 160 App. Div. 331 (145 N. Y. Supp. 325), a corporation made its note to

the order of an individual who was its vice-president, and who signed it for the company by him as such official. The payee transferred it to a purchaser who paid for it by check to the vice-president individually, without inquiry as to the consideration of the note. It was held that the purchaser was put on inquiry by the form of the note, and was chargeable with notice that the note was without consideration. In Manhattan Web Co. v. Aquidneck Nat. Bank, 133 Fed. 76, it was held that where the treasurer of a corporation drew a check in its name, which he used in payment of his individual notes, in the absence of circumstances giving rise to a reasonable inference of authority to do so, the payee was put upon inquiry, and charged with notice of the rights of the corporation, there being no presumption of authority to use its funds for such purpose from the mere fact that they are so used. A person who knowingly receives the money of a principal from an agent in payment of the latter's debt does so at his peril, and, if the agent acts without authority, the principal on proof of these facts is entitled to recover. A person dealing with an agent, although a general agent, is bound to know that by law such agent is not clothed with power to pledge, deposit, or transfer property of his principal for his own debt; and if he receives such deposit or pledge, the title is invalid, and the property may be reclaimed by the principal. 21 R. C. L. 913, § 92; Central National Bank v. Conn. Mut. Life Ins. Co., 104 U. S. 54 (26 L. ed. 693); Porter v. Roseman, 165 Ind. 255 (112 Am. St. R. 220); Baldwin v. Tucker, 112 Ky. 283 (65 S. W. 841, 57 A. L. R. 451); Dorrah v. Hill, 73 Miss. 787 (19 So. 961, 32 L. R. A. 631), Gerard v. McCormick, supra. So we are of the opinion that when the defendant bank received from the agent this check, it was put upon notice that it was the check of the principal, and that presumptively the agent was without authority to use it in making a payment on his individual debt to the defendant. In these circumstances, with nothing more appearing, the verdict was demanded in favor of the plaintiff for the amount of this check.

■ But it is urged by counsel for the defendant that the check last dealt with was paid with funds of the husband, and that for this reason the plaintiff was not entitled to have the amount thereof set off against the claim of the defendant. As we have seen, the deposit account referred to in the preceding division of this opinion

was opened in the Manufacturers National Bank of Newnan. On its face, as we have seen, it was the deposit account of the wife. But it appears that the husband deposited in this account some of his own money. He claims that these deposits of his own funds in this account were made in payment of his indebtedness to his wife, or were profits made upon stock transactions which he conducted in his own name for his wife. It is fairly inferable from the testimony of the husband, taken as a whole, that he drew checks upon this account for his individual purposes. While the husband testified that this check was paid from the funds of his wife standing in this account, we think it was for the jury to say whether this check was paid from the funds of the husband or the wife. Under the evidence in the record, a verdict on this issue was not demanded either way.

■ On February 10, 1927, there was a deposit account in the First National Bank of Newnan in the name of T. B. McRitchie, Agent. Plaintiff had an account in her own name in said bank during the years 1924 to 1927, inclusive. During that period she deposited in that account the sum of $42,685.48. On February 10, 1927, she drew her check for $1990 on the above-named bank, payable to the order of the defendant. This check was collected by the defendant and applied to the payment of the above indebtedness of the husband to it. The defendant admits that it received this check and applied the proceeds thereof to the payment of the husband's indebtedness to it, but denies that it was paid from funds of the wife. There is no evidence in the record tending to show that this check was drawn on the funds in the bank standing in the name of T. B. McRitchie, Agent. This check was drawn by the wife in her own name; and the fair presumption is, in the absence of proof, that it was paid from the deposit account standing in her name in this bank. Besides this presumption, the evidence of the plaintiff and her husband tends to establish the fact that this check was so drawn. There is no evidence in the record tending to establish the allegation of the answer that this check was not paid from funds of the wife. In these circumstances this check was received by the defendant from the wife in payment of the husband's indebtedness to it; and under the ruling made in the first division of the opinion, the amount of this check could be set off against the indebtedness due by herself and husband on the joint

note given by them to the defendant bank on July 29, 1925. A verdict to this extent in favor of the plaintiff was demanded by the evidence; and a new trial is granted on this ground.

■ On July 29, 1925, the plaintiff and her husband executed to the defendant their joint note for $13,000. This note was secured by certain certificates of stock owned by the wife. The proceeds of this loan, less the discount, were deposited on or about July 29, 1925, in the defendant bank to the joint account of plaintiff and her husband. On July 30, 1925, a signature card, signed by the plaintiff and her husband, was given to the defendant. This card was in this form: "The signatures of persons authorized to draw checks which the company will recognize in payment of funds or for the transaction of other business or accounts of the undersigned are hereby given below. Joint Account. The Atlanta Trust Company is hereby authorized to pay funds on this account to either party or the survivor." This card was signed by T. B. McRitchie and Mrs. Annie A. McRitchie. The wife claims that this was a loan to her individually, and that the proceeds of this note belonged to her. On the other hand the defendant contends that this was a joint loan to the husband and wife, and that the note speaks the truth of the transaction. The husband testified that he volunarily signed this note as security, that he was not asked to do so by any officer of the bank, and that the loan was to the wife for the purpose of investing in Florida real estate, and for the purpose of paying a balance of $3060 which she owed on 100 shares of the capital stock of the Georgia Casualty Company, and that he so informed S. McGauhy, vice-president of the defendant, who closed this loan for the bank. McGauhy denied this statement. He testified that at the time of making this loan he knew that the husband and his associates owed his bank $175,000, and that they had pledged with the bank collateral demands as security therefor. He further testified that the husband per se had no further credit at the bank at the time this $13,000 loan was made, that as a matter of fact the bank certainly made the loan based on the collateral furnished by the wife, and that the bank knew that it was her collateral. There was deposited on this joint account, in addition to the net proceeds of the note for $13,000 above referred to, from August 27, 1925, to July 15, 1926, inclusive, various amounts aggregating in the whole approximately $14,574.28. The total

of deposits in this account amounted at least to $27,379.28. There was deposited on this joint account from August 27, 1925 to January 11, 1926, inclusive, various items amounting to $9,241.70. On January 11, 1926, the husband drew his check on this account for $2180, and the proceeds thereof were applied to the above indebtedness of his to the defendant. From the facts and figures in the record it does not satisfactorily appear whether this check was paid from the proceeds of funds deposited in the bank owned by the defendant or not. The wife claims that this check was paid from her funds, and applied to the husband's indebtedness to the defendant.

From January 23, 1926, to July 15, 1926, there were deposited in this account various sums, amounting to $5,332.58. Whether this was the total amount of deposits between those dates does not satisfactorily appear from the record. One item of the deposits so made was $960. It was made on July 15, 1926. On that date the husband drew two checks on this account, one for $905, and the other for $55, both in favor of the defendant. The proceeds of these checks were applied by defendant on the husband's indebtedness to it. The above deposit of $960 was made up of two items, one for $300 and the other for $660. The first of these amounts was sent to the husband by Small to be paid to the defendant, and this amount was paid over to the defendant in one of the checks of July 15, 1926. The other amount embraced in this deposit was a check for $660, which the husband testified belonged to him, and he gave to his wife. On August 27, 1925, there was deposited in this account $416.66, the same being for salary of the husband as president of the Georgia Bond & Mortgage Company. On September 25, 1925, there was deposited in this account $2,710.05. It does not appear to whom this money belonged, whether to the plaintiff, her husband, or others. On November 4, 1925, there was deposited in this account $566.66, and on November 14, 1925, there was deposited in this account $2,131.31. It does not appear to whom these funds belonged. On November 30, 1925, there was deposited $416.66, the same being the salary of the husband. On December 14, 1925, there was deposited in this account $2,994.36, and it does not appear from the record to whom these funds belonged. The husband testified that it might have been dividends coming to him from his own stock, or that of the wife, or money of

third persons. On January 23, 1926, there was deposited in this account $1073.40. The husband testified that this was his own money, being dividends on stock which he owned in the Georgia Casualty Company, but that he deposited it in the bank in payment on his indebtedness to his wife. On February 10, 1926, there was deposited in this account $2723.06. This deposit was composed of various amounts which he received from parties interested in the purchase of Florida property. We think it is fair to presume that this money was paid out properly, and was the fund of neither the husband nor the wife. On June 23, 1926, there was deposited in this account $576.12. It does not appear from what source this money was derived or to whom it belonged. It will thus be seen that there were deposited in the account funds which belonged to the husband which he claims he paid to his wife on his indebtedness to her, funds which belonged to third parties, and funds the ownership of which does not appear from the evidence in the record. Whether the check of January 11, 1926, was paid from the funds of the wife depends upon several considerations. First, it is necessary to determine whether the note for $13,000 represented the individual indebtdness of the wife to the defendant, or whether it represented the joint debt of the wife and husband to the bank; second, whether, if this note is the joint obligation of the husband and wife, the husband received more than his share of the proceeds thereof, or whether in giving this check he used the same in a manner foreign to the joint undertaking in which he and his wife were engaged; and third, whether this check was paid from funds of the wife in this joint account other than the proceeds of this note. The evidence did not demand a finding that this was the individual note of the wife and not the joint note of herself and husband.

A husband and wife may engage in a joint enterprise, make joint contracts in reference thereto, and execute joint promissory notes therein. Where such is not merely the outward color but the real truth of the transaction, a debt contracted in the joint enterprise is the debt of the wife as well as of the husband, and she may pledge her separate property as security for its payment. *Schofield* v. *Jones,* 85 *Ga.* 816 (2) (11 S. E. 1032). If the relation of debtor and creditor exists between the lender and the husband, and the form given to the writing executed touching the

loan and security for the same, is a mere device to cover up a real case of suretyship on the part of the wife, her contract will not be obligatory. *McCrory* v. *Grandy,* 92 *Ga.* 319 (18 S. E. 65). While a wife may not ordinarily assume the debts of her husband, when she purchases from him property which is encumbered, she must, in order to secure an unencumbered title, pay up any debts created by him which are a lien upon the property purchased. *Daniel* v. *Royce,* 96 *Ga.* 566 (23 S. E. 493); *Taylor* v. *American Freehold &c. Co.,* 106 *Ga.* 238 (32 S. E. 153); *Lowenstein* v. *Meyer,* 114 *Ga.* 711 (40 S. E. 726); *Vizard* v. *Moody,* 119 *Ga.* 918 (3) (47 S. E. 348). A husband and wife may legally enter into a joint contract or undertaking the consideration of which passes to them jointly, and in that event the wife will be bound. *Braswell* v. *Federal Land Bank,* 165 *Ga.* 123 (139 S. E. 861). While a wife can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, she may nevertheless, upon her own responsibility and voluntarily, enter into a contract for borrowing money and give her note therefor and a mortgage upon her property to secure its payment, and such a contract will be binding on her though the party with whom she contracts may know that she intends to use the borrowed money for her husband's benefit, the husband's creditor not being the lender; but a contract based on a mere colorable transaction, to which the lender is a party, the purpose of which is to make the wife her husband's surety, will not be enforced against her. *White* v. *Stocker,* 85 *Ga.* 200 (11 S. E. 604); *McCrory* v. *Grandy,* supra; *Nelms* v. *Keller,* 103 *Ga.* 745 (30 S. E. 572); *Chastain* v. *Peak,* 111 *Ga.* 889 (36 S. E. 967); *Hill* v. *Cooley,* 112 *Ga.* 115 (37 S. E. 109); *Johnson* v. *Leffler Co.,* 122 *Ga.* 670 (50 S. E. 488); *Jackson* v. *Reeves,* 156 *Ga.* 802 (4) (120 S. E. 541). In an action against a wife upon her joint promissory note made by her and her husband, evidence is relevant which shows that a part of the consideration went directly from the creditor to the husband on a check drawn by him individually and was used by him in payment of his individual indebtedness. As to money obtained by a husband on the joint credit of himself and wife, and applied to his own use, he is the real primary debtor, and the wife is in the position of a surety. *Dobbins* v. *Blanchard,* 94 *Ga.* 500 (21 S. E. 215).

So in this case, if the payment of January 11, 1926, by the hus-

band to the defendant bank was made with money obtained by him on the joint credit of himself and wife, he was the real primary debtor pro tanto, and the wife was in the position of a surety. If the transaction was a colorable one in that this note so given to the bank was in truth and fact the individual obligation of the wife, and this payment was made from the proceeds of this note, then the wife would be entitled to set off the amount of this payment against the defendant bank in a suit on the note. If this payment was made from funds in this joint account, not arising from the proceeds of this loan or from funds otherwise belonging to the wife, then she would not be entitled to set it off in an action by the bank on this note. On the other hand, if this payment was made from either of the above sources, the wife would be entitled to set it off against the bank in this suit. On these issues we can not say that a verdict was demanded in favor of the wife as to the check of January 11, 1926. As to the two checks drawn on July 15, 1926, aggregating $960, it is fairly inferable from the evidence that $300 of this amount was paid with funds belonging to the husband. As to the remaining $660 of the aggregate of these two checks, it was for the jury to say whether the money so paid was money which the husband had given the wife, or money which he had paid her on his indebtedness to her.

■ Applying the rulings above made, we can not say that a verdict was demanded in favor of the wife as to any payments made by the husband to the defendant, except that dealt with in the 5th division of the opinion. So we can not hold that the verdict was demanded in favor of the defendant upon all the issues involved in this case. This brings us to consider the grounds of the motion for new trial.

■ In the first ground of the amendment to her motion for new trial the plaintiff alleges that the court erred in charging the jury, in effect, that if the husband paid the wife's money on a joint obligation of herself and husband, whether or not the creditor knew it was her money, such amount so paid on a joint obligation, if it was a joint obligation, could not be recovered in a suit like the one now on trial. In the second ground she complains that the court erred in charging the jury that "If the debt should be that of the wife herself, or such a joint obligation of the wife and husband as I have described, in either of those events money in the joint fund paid

by the husband on such a joint debt, if, that be true, could not be recovered back by the wife in this proceeding." The wife excepts to these instructions upon the grounds (a) that there was no pleading or evidence to the effect that her money was paid on a joint obligation of herself and husband; and (b) that the same tended to confuse and mislead the jury. We think these exceptions are well taken. There was no evidence that any of the payments which the plaintiff challenges were made upon any joint obligation of the husband and wife. So we are of the opinion that the court erred in these two instructions.

■ In the 3d ground the plaintiff complains that the court erred in charging the jury that "If the plaintiff should fail to carry that burden, or unless a preponderance of the evidence, taken together, convinces you that the husband signed as security only, the proceeds would be the joint funds of the husband and wife, and any payment made by the husband from such joint fund, if that be true, or if a joint fund owned by both, however the checks may have been signed, could not be recovered by the wife in this case." The plaintiff excepts to this charge upon the grounds (a) that the husband could not use the proceeds of a joint note of himself and wife in payment of his individual indebtedness to a creditor with knowledge of the facts; and (b) that payments from a joint fund of the husband and wife to a creditor of the former having knowledge are binding upon the wife only to the extent of so much of the consideration, if any, as was expended for her use, or so much thereof as she actually received the benefit of, and that she could not be charged with the checks executed by her husband to his creditor and applied by the creditor in payment of the individual debt of the husband. We do not think that this was an accurate and correct statement of the law. As we have seen, when money is obtained by a husband on the joint credit of himself and wife and applied to his own use, he is the real primary debtor, and the wife is in the position of a surety. *Dobbins* v. *Blanchard,* supra. We think the court erred in this instruction to the jury.

■ In the 4th ground the plaintiff complains that the court erred in charging the jury that they should find from the evidence whether it was true that the wife made a gift of the funds so borrowed from the defendant to her husband. She contends that this instruction was without evidence to support it, and was calculated

to mislead and confuse the jury. In the 5th ground she complains that the court erred in charging the jury, in effect, that while the wife could recover her money paid by her husband on his own debt, if the creditor knew it at the time, and knew that the payment was made with her money, it is in no way unlawful for a wife to make a gift of property or money to her husband, and if she gave him the money or joint interest in it, and it was then deposited jointly in the bank, the husband could, after such gift was made, pay it to any creditor of his, and the wife under such circumstances could not recover it. To this instruction the wife excepts upon the ground that it was not based upon evidence, that it tended to confuse and mislead the jury, and that the language, "if she gave him a joint interest in it, he could pay it to any creditor of his," was contrary to law, as the defendant would have no right to receive the proceeds on the individual debt of the husband, because it would nullify the statute which protects the wife's private estate from the creditors of the husband. We think the court erred in submitting to the jury the issue of gift vel non of these funds. The oral testimony negatives the idea of a gift of these funds or any part thereof to the husband. On the contrary the testimony of the wife and husband is that the funds belonged to the wife, that the husband was a general agent in the control, management, and investment of her funds, and that the creation of the joint account was one for the convenience of the husband in executing his agency for the wife. If these funds were the funds of the wife, and she deposited them in a joint account in the name of herself and husband, with the right of either party to draw thereon, and the gift of the residuum of these funds, if any there should be, to the survivor, such transaction would not create a gift in presenti to the husband. At most it authorized the husband to draw checks on the joint account for the joint undertaking or transaction to which the agency related. At most it was a joint fund to be used for joint purposes, and was not an individual fund to be used by the husband for his own uses or benefit, to the exclusion of the wife. *Dobbins* v. *Blanchard,* supra. The husband would not have the right to draw on these funds for his individual use, even if the amount drawn by him did not exceed one half of the fund. The fund was not created for the husband or wife individually, but for their joint use. Besides, the wife had as much power and control over these funds as the hus-

band; and in such circumstances the creation of this joint account would not amount to a gift of the funds or an interest therein to the husband. *Clark* v. *Bridges,* 163 *Ga.* 542 (136 S. E. 444).

■ The court charged the jury as follows: · "While the general rules of law are as given you in charge respecting a wife's right to recover her money paid by her or her husband on her husband's debts to a creditor who knows she is so doing would give her a right to recover it back, if a wife should make such payment, or if her husband, having her authority to draw checks and make payments out of her funds, should with her knowledge, and if she intended at the time to make the payments out of her money to protect collateral in which she had an interest or preserve or protect her interest in the collateral and not solely to pay her husband's debt or make a payment on her husband's debt, as she contends in this case, such sum or sums so paid could not be recovered in any event. The law would permit the wife to either protect collaterals in which she was interested, if she could protect them, or permit them to be lost or sacrificed or to go as she might decide; but if she should make payment to her husband's creditor, intending to protect her own interests in the collateral and not for the purpose solely of paying his debts out of her money, she could not in that event recover back any sum or item so paid, if paid to protect such collateral, as I have said. It is for you to decide from the evidence what the truth is as to these payments, or either of them, and what her purpose and intention was." To this charge the plaintiff excepts upon the grounds: (a) There is no evidence that movant, or her husband acting for her, made any payments out of her funds with the intention to protect or preserve any collateral in which she. had an interest. (b) Movant, payee of an undelivered collateral note executed by her husband to her and retained in his possession, did not assume any obligation to pay the first lien on the collateral mentioned in the note, upon which defendant held the first lien. (c) There was no evidence that movant paid, or authorized her husband to pay, any of her money to defendant upon the individual debts of her husband for the purpose of. protecting any equity she might have in collateral which her husband had pledged to the defendant to secure the indebtedness of himself, Gunn, and Small to the defendant. (d) There was no evidence that movant had any knowledge or notice of the

note or contracts executed by her husband hereinafter referred to, or that she paid or authorized the payment of any of her money to protect the collateral specified in the note dated September 8, 1922, or the contract dated April 15, 1924, both of which were executed and retained by the husband in his possesion, and of which movant had no knowledge. (e) Such instruction necessarily confused and misled the jury, and caused them to consider an issue not involved in the case. (f) The undisputed evidence of movant was that she executed and delivered the check for $1990, drawn from her funds in the First National Bank of Newnan, payable to the defendant, which the defendant accepted, received the proceeds and credited them in payment of the individual indebtedness of the husband.

To properly comprehend the question raised in this ground it becomes necessary to consider some of the facts involved. On September 8, 1922, the husband executed his note for $2,879.62, payable on demand to the order of his wife. This note contains this recital: "In substitution for 30 shares McRitchie Inc. stock, any equity in Georgia Casualty Company stock held by Atlanta Trust Company and by Macon Security Company as collateral, 1300 shares, by agreement. This substitution made when 30 shares McRitchie Inc. stock given First National Bank of Newnan, Georgia, as collateral on obligation of T. B. McRitchie." The husband testified that he got his wife's consent to make the above substitution. There is in the record an agreement between the plaintiff and her husband, dated April 15, 1924, in which it is recited that the wife had loaned to her husband $14,000, represented by a note of even date, signed by her husband and payable to her order, with interest at the rate of 8 per cent. per annum, and due on demand. This agreement recites that in order to secure the payment of said note the husband transferred to his wife all of his right, title, interest, and equity in certain stock in the Georgia Casualty Company, and certain bonds of the Macon Security Company, which are fully described in an agreement between W. E. Small, Will Gunn, and her husband. Attached to the above contract was a copy of an agreement between said Small, Gunn, and McRitchie, dated April 15, 1924. This agreement recites that the parties have jointly borrowed from the defendant the sum of $175,-000, with which sum they have purchased 4375 shares of the in-

creased capital stock of the Georgia Casualty Company at $40 per share, that said loan with the defendant is secured by said 4375 shares, by $50,000 of bonds of the Macon Security Company, and 2500 additional shares of the Georgia Casualty Company stock. It further recites that while each party to the agreement is jointly and severally liable for the payment of the loan with the defendant, the rights, interests, and obligations of each as between themselves is as follows: W. E. Small and Will Gunn each are to have a 2/5 interest in the 4375 shares purchased, equivalent to 1750 shares, and each has furnished 2/5 of the collaterals required to secure said loan, and each is obligated to pay 2/5 of the principal, interest, and expenses connected with said loan as the same becomes due and payable; and McRitchie is to have a 1/5 interest in said stock purchased, equivalent to 875 shares, and has furnished 1/5 of the collaterals required to secure said loan, and is obligated to pay 1/5 of the principal, interest, and expenses connected with the same as it becomes due and payable. The defendant had a first lien upon the stock mentioned in the foregoing contracts, arising from its pledge to it to secure the indebtedness of said Small, Gunn, and McRitchie aforesaid. The defendant contends that the payments made upon the above large indebtedness, if they were made with the funds of the wife, were paid upon a debt which was a prior lien upon the property which she acquired as collateral to a loan she had previously made her husband, that in making these payments she was protecting her collateral, and that for this reason she could not hold the defendant liable for these payments.

In *Daniel* v. *Royce, 96 Ga.* 566 (23 S. E. 493), this court held: "Where a husband made a conveyance of land to his wife, reciting therein that it was subject to a deed to a third person, previously made by the grantor to secure a specified sum which had been loaned to him, and the wife, being thus clothed with the title, borrowed money and gave her own promissory note for the same, intending to use a portion of such money in paying off the above-recited encumbrance, although this intention was known to the lender, and although the wife did in fact use a portion of the money borrowed by her for the purpose stated, she could not defeat a recovery by the lender upon the note, either in whole or in part, upon the ground that it was given for her husband's debt, or for money with which to pay the same. Properly treated, the loan was one con-

tracted by her for the purpose of discharging an encumbrance upon her own property, subject to which she had taken and accepted her husband's deed, and her doing so made the encumbrance her own debt." The above principle again was announced by this court in *Taylor* v. *American Freehold &c. Co.,* 106 *Ga.* 238 (32 S. E. 153). In *Lowenstein* v. *Meyer,* supra, the wife purchased from her husband property on which there was a valid subsisting lien created by the husband. The holder of this lien had engaged a lawyer to foreclose the same. The wife who was then negotiating for the purchase of this property recognized this claim of lien; so, that she might obtain the property free and unencumbered by such lien, she agreed to pay the amount thereof. The holder of the lien afterwards brought suit to foreclose his lien. This court, upon the authority of the two cases above cited, held that this was not such an assumption by the wife of the husband's debt as is prohibited by law. In *Vizard* v. *Moody,* supra, this court held that "A married woman who buys property which is encumbered may assume the payment of the encumbrance in order to secure a clear title to the property, and she will be bound by such an assumption of the lien on the property." In that case, which was a suit in ejectment, Walter and his wife were operating a turpentine farm in Mississippi and were indebted to Vizard. D. H. Moody and his wife, desiring to purchase this farm, agreed to assume the debts of the Walters to Vizard, and accordingly the turpentine farm and its appurtenances were turned over by the Walters to a partnership composed of Moody, his wife, and her son. It was agreed that Vizard should advance to the Moodys $2,000 additional, and as evidence of the assumption by the Moodys of the debt of the Walters and of the contemplated advancements of additional sums by Vizard, notes were given by the Moodys to Vizard for $5,000; and as security for this sum and such other advances as might be made, Moody and his wife executed a deed of trust in the nature of a mortgage, to Mason as trustee for Vizard, to secure the debt to Vizard. Vizard claimed title under said trust deed. Mrs. Moody set up that that deed was void because it was given by her to secure an indebtedness of the Walters to Vizard.

Counsel for the defendant rely upon the above cases to sustain the proposition that where collaterals had been deposited with the defendant by the husband to secure an indebtedness of $175,000

of two others and himself to the defendant, thus giving to the defendant the first lien on such collaterals, and afterwards borrowed $14,000 from his wife, and transferred and assigned to her to secure such loan all his interest and equity in such collaterals, payments by the husband with the wife's funds on the above joint debt of the husband and others to defendant, which had the effect of making such collaterals more valuable, were not an assumption or payment on the husband's indebtedness. We can not agree to this contention of counsel. The authorities cited do not support this proposition. The instant case is not one where the wife buys encumbered property from her husband and borrows from another money with which to pay off the encumbrance. This case is not one in which the wife buys from her husband property encumbered by him and agrees with the holder thereof that, if he would not enforce the same, in order that she might obtain a good and perfect title to the property she would pay such holder the amount of the encumbrance held by him. In the cases cited the wife obtained title to the property from the husband. In three of them the wives borrowed money from a third person to pay off such encumbrances, in the fourth case she purchased property from her husband and agreed with the holder of a lien thereon that she would pay the amount of such lien if the holder would not foreclose the same. These cases differ vitally from the case at bar. In the case at bar the wife did not obtain title to the collateral pledged by her husband to the defendant, but only his equity therein. She did not borrow from the defendant money for the purpose of paying off the first lien on this collateral. She made no agreement with the defendant to pay the debt of the husband if the defendant would forbear to foreclose his lien upon this collateral. Finally, to hold that the wife can not recover payments made with her funds on their joint debt to the defendant, because the effect of such payments would be to enhance her equity in the collateral pledged to the defendant to secure such a debt, would in effect make lawful the use of her money in paying the indebtdness of her husband, which is prohibited by our statute. For these reasons, we do not think that the wife was estopped, for the reason assigned by counsel for the defendant, from setting off against the claim of the defendant the payments made by the husband with her alleged funds on such joint indebtedness. We are of the opinion that the charge

complained of in this ground of the motion for new trial was erroneous under the facts of this case.

The court charged the jury as follows: "In a case where such payments by the wife actually protected and redeemed or recovered the equity in the collateral in which she owned an equitable interest, a wife would not be heard to assert that she had made payments for any other purpose than to redeem such equity, since the law would presume if she recovered and held her interest in the collateral that she had made the payments for that purpose; but in a case where she did not so protect and redeem such collateral, the question of her intention in making payments to the husband's creditor is for the jury under the rules of law already given, and that would apply with equal force to other notes in this case, as I have given you in charge, if others than the two mentioned or included in the pleadings as now contended by Mr. Powers, and to which pleadings you should look." In the 7th ground of the motion for new trial the plaintiff excepts to this charge, upon the grounds that there is no evidence upon which to base it, because it necessarily confused and misled the jury, and because under the undisputed evidence the plaintiff drew her check for $1990 upon her funds in the First National Bank of Newnan, in favor of the defendant, in payment of the individual indebtedness of the husband. We are of the opinion that this charge is subject to some of the criticisms made upon it. This charge tended to confuse and mislead the jury. The evidence discloses that $3060 of the loan made by defendant on the joint note of the wife and husband was used in redeeming 100 shares of Georgia Casualty Company stock held by the Macon National Bank. In the present proceeding the wife is not seeking to recover this sum from the defendant. There is no evidence that the payments made with the wife's money actually protected, redeemed, or recovered the equity in the collateral pledged by the husband to secure the loan of $14,000 made by the wife to him. In view of these facts this instruction was not adjusted to the issues involved, and tended to confuse and mislead the jury.

The court charged the jury as follows: "I charge you that the mere addition of the word agent after the signature of Mr. McRitchie on checks payable to the defendant would not be sufficient to charge the defendant with knowledge, either actual or

constructive, that the funds on which the checks were drawn were the funds of Mrs. McRitchie. But whether, in connection with other facts and circumstances, the addition of the word agent after his signature is sufficient to put the defendant on inquiry as to the character and limitations of the agency, if such, is for the jury to determine from the evidence." To this charge the plaintiff excepts upon the ground that as to checks drawn on her individual funds, signed by her husband, with the word "agent" affixed to his signature, the duty was put upon the defendant to investigate the authority of the agent, and that such signature was as a matter of law notice sufficient to charge the party accepting the check with knowledge, both actual and constructive, that the funds on which the check was drawn were a fiduciary account. In view of the ruling made in the 2d division of this opinion, this instruction was not erroneous.

■ In the 9th ground of the motion the plaintiff contends that the verdict is contrary to the evidence and to law, in that the undisputed evidence is that the check for $2065 drawn upon the funds of plaintiff in the Manufacturers National Bank of Newnan, and applied by defendant to the individual indebtedness of the husband to it, was signed "T. B. McRitchie, Agt. for Mrs. Annie A. McRitchie," and the undisputed evidence was that the defendant knew of the marital relationship between plaintiff and T. B. McRitchie, and was necessarily aware that funds of the wife were being used to pay the individual debts of the husband, the jury not allowing plaintiff credit for the check upon her note to defendant. We think this ground is without merit, for the reasons assigned in the 4th division of this opinion.

■ The plaintiff, in the 10th ground of the motion for new trial, complains that the verdict was contrary to the evidence and to law, in that the undisputed evidence was that she executed, delivered, and paid the check for $1990, drawn upon her funds in the First National Bank of Newnan, payable to the defendant and signed by her individually, to defendant, and defendant accepted and credited the payment upon the individual indebtedness of her husband to it, the jury not allowing plaintiff credit for the check upon her note to it. Under the ruling made in the 5th division of this opinion, this ground is well taken.

■ In the 11th, 12th, 13th, 14th, and 15th grounds of her mo-

tion for new trial the plaintiff asserts that the court erred in refusing to give in charge the principles of law embraced in the requests set out therein. It does not appear from these grounds that these requests were preferred by movant; and for this reason they will not be considered. *McDonald* v. *Dabney,* 161 *Ga.* 711 (6) (132 S. E. 547). As we grant a new trial in this case, no ineradicable harm is done to the plaintiff.

█ As we grant a new trial, we do not deal with the 16th ground which is based upon newly discovered evidence. On the next trial plaintiff can avail herself of all pertinent evidence.

*Judgment reversed. All the Justices concur.*